## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| TAYLOR ENERGY COMPANY LLC, | ) |
| Plaintiff, | ) |
|  | ) |
|  | ) No. 16-12C |
|  | ) Judge Nancy B. Firestone |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| Defendant. | ) |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
## FOR JURISDICTIONAL DISCOVERY

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

/s/ John H. Roberson
JOHN H. ROBERSON
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 353-7972
Fax: (202) 514-8640
Email: John.Roberson@usdoj.gov

Dated: July 28, 2016

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ i

SUMMARY OF ARGUMENT .......................................................................... 1

ARGUMENT ..................................................................................................... 4

I.  STANDARD OF REVIEW ....................................................................... 4

II.  THIS COURT SHOULD DENY TAYLOR'S REQUEST FOR
     JURISDICTIONAL DISCOVERY ........................................................ 6

   A.  In Seeking Jurisdictional Discovery, Taylor Proposes A Legal
        Paradigm That Incorrectly Presumes The Application Of Louisiana
        Law In The Interpretation Of The Trust Agreement ...................... 7

      1.  Federal Law, Not Louisiana Law, Controls The Disposition
           Of The Trust Funds Securing Taylor's Decommissioning
           Obligations ...................................................................... 13

      2.  The Trust Agreement Is In Complete Accord With Federal
           Law ................................................................................. 20

   B.  Jurisdictional Discovery Is Not Warranted Because The
        Government's Motion To Dismiss Relies Upon Taylor's Own
        Statements In Its Complaint, Documents Taylor Cited In Its
        Complaint, Taylor's Own Filing Before The IBLA, And
        Publicly Available Documents. .................................................... 26

   C.  No Jurisdictional Discovery Is Needed To Resolve The
        Government's Motion To Dismiss Based Upon The Statute Of
        Limitations ................................................................................. 28

      1.  Jurisdictional Discovery Concerning The Statute Of
           Limitations Based Upon Taylor's Legally Invalid
           Reliance On Louisiana Law Is Not Warranted ................. 28

      2.  Jurisdictional Discovery Concerning The Accrual Of The
           Statute Of Limitations Based On The Inability To
           Decommission The Oil And Gas Wells Using The Best
           Available Technology Is Not Warranted .......................... 29

      3.  Jurisdictional Discovery Concerning The Accrual Of The
           Claim Concerning The Removal Of The Oil-Contaminated
           Soil Is Not Warranted ..................................................... 33

   E.  Jurisdictional Discovery Is Not Needed To Resolve The
        Government's Motion To Dismiss Based Upon The Doctrine Of
        Primary Jurisdiction .................................................................. 37

CONCLUSION .............................................................................................. 40

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abbot Point of Care, Inc. v. Epocal, Inc.*,
  666 F.3d 1299 (Fed. Cir. 2012)...................................................................... 11

*Advanced Aerospace Techs., Inc. v. United States*,
  113 Fed. Cl. 265 (2013) ................................................................................ 12

*AGIP Petroleum Co. v. Gulf Island Fabrication*,
  920 F. Supp. 1330 (S.D. Tex. 1996) ............................................................. 19

*Alleman v. Omni Energy Services Corp.*,
  434 F. Supp. 2d 405 (E.D. La. 2006) ........................................................... 19

*Al Maqaleh v. Hagel*,
  738 F.3d 312 (D.C. Cir. 2013) ......................................................... 5, 25, 37

*Am. W. Airlines, Inc. v. GPA Group, Ltd.*,
  877 F.2d 793 (9th Cir. 1989) ......................................................................... 5

*Anderson v. Sec'y of Health and Human Servs.*,
  No. 12-16V, 2013 WL 691003 (Fed. Cl. Jan. 29, 2013) ............................. 37

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................. 9, 12

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
  566 F.3d 1012 (Fed. Cir. 2009) ..................................................................... 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................... 9

*Best Van Lines, Inc. v. Walker*,
  No. 03 Civ 6585, 2004 WL 964009 (S.D.N.Y. May 5, 2004) .................... 11

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007) ......................................................................... 11

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) .................................................................. 4, 38

*BP Exploration & Prod., Inc. v. Callidus Tech's, L.L.C.*,
  No. Civ. A. 02-2318, 2003 WL 193450 (E.D. La. Jan. 27, 2003) .......... 15, 19

*Cedars–Sinai Med. Ctr. v. Watkins,*
    11 F.3d 1573 (Fed. Cir. 1993)..................................................................... 35

*Cheyenne Arapaho Tribes of Okla. v. United States,*
    558 F.3d 592 (D.C. Cir. 2009) ........................................................... 5, 25, 37

*Clear Creek Cmty Servs. Dist. v. United States,*
    100 Fed. Cl. 78 (2011) ............................................................................... 6

*Demette v. Falcon Drilling Co.,*
    280 F.3d 492 (5th Cir. 2002) ..................................................................... 13

*EP Operating Limited Partnership v. Placid Oil Co.,*
    26 F.3d 563 (5th Cir. 1994) ....................................................................... 15

*Esso Standard Oil Co. (PR) v. United States,*
    559 F.3d 1297 (Fed. Cir. 2009).................................................................. 37

*F.D.I.C. v. Dosland,*
    50 F. Supp. 3d 1070 (N.D. Iowa 2014)......................................................... 6

*Fluor Ocean Services Inc. v. Rucker Co.,*
    341 F. Supp. 757 (E.D. La. 1972)............................................................... 15

*Freeman v. United States,*
    556 F.3d 326 (5th Cir. 2009) ................................................................. 6, 39

*Fuselier v. Sea Boat Rentals, Inc.,*
    No. 06-4488, 2007 WL 2713278 (E.D. La. Sept. 14, 2007)........................ 19

*GOM Shelf, LLC v. Sun Operating Ltd. P'ship,*
    No. 4:06-cv-3444, 2008 WL 901482 (S.D. Tex. March 31, 2008) ........ 23, 24

*Grand Isle Shipyard, Inc. v. Seacor Marine, LLC,*
    589 F.3d 778 (5th Cir. 2009) ..................................................................... 14

*Grynberg v. Ivanhoe Energy, Inc.,*
    490 Fed. Appx. 86 (10th Cir. 2012)......................................................... 6, 33

*Gualandi v. Adams,*
    385 F.3d 236 (2d Cir. 2004)......................................................................... 5

*Gulf Offshore Co. v. Mobil Oil Corp.,*
    453 U.S. 473 (1981)................................................................................... 18

*Haber v. United States,*
   No. 15-2078-cv, 2016 WL 2942370 (2d Cir. May 20, 2016)............................... passim

*Kam-Almaz v. United States,*
   682 F.3d 1364 (Fed. Cir. 2012).................................................................. 12

*Kelly v. Syria Shell Petroleum Dev. B.B.,*
   213 F.3d 841 (5th Cir. 2000) ..................................................................... 6

*Krossa v. All Alaskan Seafoods, Inc.,*
   37 P.3d 411 (Alaska 2001)........................................................................ 19

*Laredo Offshore Constructors v. Hunt Oil Co.,*
   754 F.2d 1223 (5th Cir. 1985) ...................................................... 14, 15, 17

*Laub v. United States Dep't of Interior,*
   342 F.3d 1080 (9th Cir. 2003) ................................................................... 4

*Martin v. United States,*
   102 Fed. Cl. 779 (2012) ............................................................................ 13

*Matte v. Zapata Offshore Co.,*
   784 F.2d 628 (5th Cir. 1986) ..................................................................... 19

*Medical Solutions, Inc. v. C Change Surgical LLC,*
   541 F.3d 1136 (Fed. Cir. 2008)................................................................... 11

*Nat'l Marketing Consultants, Inc. v. Blue Cross and Blue Shield Assoc.,*
   No. 87 C 7161, 1987 WL 20138 (N.D. Ill. Nov. 29, 2001)......................... 39

*Nippon Oil Exploration U.S.A. Ltd. v. Murphy Exploration & Production Co.-USA,*
   Civ. No. 10-2850, 2011 WL 2456358 (E.D. La. June 15, 2011)........................... 23, 25

*Nuance Commc'ns, Inc. v. Abbyy Software House,*
   626 F.3d 1222 (Fed. Cir. 2010)................................................................ 5, 25, 37

*Offshore Logistics, Inc. v. Tallentire,*
   477 U.S. 207 (1986)..................................................................... 16, 17, 19

*Padilla v. United States,*
   58 Fed. Cl. 585 (2003) .............................................................................. 6

*Ricci v. Chicago Mercantile Exchange,*
   409 U.S. 289 (1973)................................................................................... 39

*Rick's Mushroom Serv., Inc. v. United States,*
  521 F.3d 1338 (Fed. Cir. 2008)......................................................................... 4

*Rodrigue v. Aetna Cas. & Surety Co.,*
  395 U.S. 352 (1969)...................................................................... 13, 16, 17, 18

*Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States,*
  672 F.3d 1021 (Fed. Cir. 2012)....................................................................... 34

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.,*
  672 F.3d 1041 (Fed. Cir. 2012)........................................................ 5, 11, 25, 37

*Smith v. United States,*
  495 Fed. Appx. 44 (Fed. Cir. 2012)..................................................... 4, 5, 39

*Steel Co. v. Citizens for a Better Environment,*
  523 U.S. 83 (1998).......................................................................................... 12

*Striplin v. United States,*
  100 Fed. Cl. 493 (2011).................................................................................. 13

*Texaco Exploration & Production, Inc. v. AmClyde Engineered Products,*
  448 F.3d 760 (5th Cir. 2006) .......................................................................... 18

*Union Tex. Petr. Corp. v. PLT Eng'g, Inc.,*
  865 F.2d 1043 (5th Cir. 1990) ................................................................... 17, 18

*United States Enrichment Corp. v. United States,*
  117 Fed. Cl. 548 (2014).................................................................................. 12

*United States v. Winstar,*
  518 U.S. 839 (1996)........................................................................................ 23

*Viasystems, Inc. v. EBM-Papst St Georen GmbH & Co., KG,*
  646 F.3d 589 (8th Cir. 2011) ............................................................................ 6

*Walter Oil & Gas Corp. v. NS Group, Inc.,*
  867 F. Supp. 549 (S.D. Tex. 1994).................................................................. 18

*Wells Fargo & Co. v. Wells Fargo Express Co.,*
  556 F.2d 406 (9th Cir. 1977) ............................................................................ 4

**Statutes**
33 U.S.C. §§ 1251-1376 (1982)............................................................................ 20

33 U.S.C. § 1321................................................................................................... 20

33 U.S.C. §§ 2701-62 (2010) ............................................................................................ 20

33 U.S.C. § 2701 ................................................................................................................ 21

33 U.S.C. § 2702 ................................................................................................................ 21

43 U.S.C. §§ 1331-56b ...................................................................................................... 13

43 U.S.C. § 1332 ................................................................................................................ 20

43 U.S.C. § 1333 .......................................................................................................... passim

43 U.S.C. § 1334 ................................................................................................................ 20

43 U.S.C. § 1348 ................................................................................................................ 20

43 U.S.C. § 1349 ................................................................................................................ 14

**Regulations**
30 C.F.R. Part 250 ........................................................................................... 15, 16, 19, 21

30 C.F.R. § 250.1701 ................................................................................................... 21, 36

30 C.F.R. § 250.1702 ......................................................................................................... 36

30 C.F.R. § 250.1703 ................................................................................................... 21, 36

30 C.F.R. § 250.1714 ......................................................................................................... 36

30 C.F.R. § 250.1715 ......................................................................................................... 36

30 C.F.R. § 250.1716 ......................................................................................................... 36

30 C.F.R. § 250.300 ........................................................................................................... 36

30 C.F.R. § 556.52 ............................................................................................................. 21

30 C.F.R. § 556.53 ............................................................................................................. 21

30 C.F.R. § 556.56 ...................................................................................................... passim

30 C.F.R. § 556.58 ............................................................................................................. 21

**Legislative History**
S. Rep. No. 411, at 11 (1953) ............................................................................................ 18

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TAYLOR ENERGY COMPANY LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE UNITED STATES, )<br><br>Defendant. ) | No. 16-12C<br>Judge Nancy B. Firestone |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY

Pursuant to Rules 26(b)(2)(C) and 26(d)(1), of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully opposes the motion of plaintiff, Taylor Energy Company LLC (Taylor) to conduct jurisdictional discovery.

## SUMMARY OF ARGUMENT

Taylor presents two overarching arguments as it attempts to justify its request for jurisdictional discovery. First, Taylor argues that jurisdictional discovery is warranted because the United States, in describing Taylor's cause of action in our motion to dismiss, "recasts and manipulates the factual allegations of Taylor's Complaint and sets forth a counter-statement of facts" that do not pertain to Taylor's claims in its complaint. Pl. Mot. at 13. Specifically, Taylor argues that, although its complaint alleges that, in May 2015, the Government improperly, and unilaterally, inserted into the Trust Agreement an indefinite term for Taylor's performance (*id.* at 14, 16), the Government has mischaracterized these facts by asserting that there was always an indefinite term to

the Trust Agreement. *Id.* at 14. Given this mischaracterization, Taylor argues that it is entitled to jurisdictional discovery to obtain facts to demonstrate the differences between Taylor's and the United States' theories of the case. *Id.* at 14-15.

But the difference between Taylor's arguments and the United States' assertions can be explained by one legal point – not a factual one. Specifically, Taylor contends that the Trust Agreement should be interpreted under Louisiana law. We contend it should be interpreted under Federal law.

Under Taylor's interpretation of the Trust Agreement using Louisiana law, the Trust Agreement always had a duration that was restricted by an implied "reasonable duration" term, imported from Louisiana contract law principles. *See, e.g.,* Compl. at ¶¶ 4, 68-69, 75, 78. Thus, Taylor argues that, when the Government informed Taylor in May 2015 that Taylor (through the Trust) would remain obligated to maintain financial assurance for the performance of decommissioning activities until they were completed, the Government was introducing a new, indefinite-duration term to the Louisiana-law-informed Trust Agreement.

Under the United States' interpretation of the Trust Agreement using Federal law, Taylor (through the Trust) is, and has always been, obligated to maintain funds for the required decommissioning activity until it is completed. Thus, when the Government informed Taylor in May 2015 that Taylor would remain obligated to fund decommissioning activities through the Trust until the decommissioning is complete, the Government was merely reiterating what Taylor's obligations have always been under the Trust Agreement and governing Federal law.

2

Taylor, however, demands jurisdictional discovery to explore the discrepancy between the Government's view of the Trust Agreement under Federal law and Taylor's view of the Trust Agreement under Louisiana law, especially with respect to how these two views affect the Government's statute of limitations and primary jurisdiction jurisdictional arguments. But jurisdictional discovery is not warranted here because this discrepancy is actually the reflection of a purely legal dispute concerning the choice of the law – Federal or State – that should be used to interpret the Trust Agreement. And a finding by this Court that Federal law controls will obviate Taylor's request for jurisdictional discovery to obtain evidence of a "factual" discrepancy between Taylor's paradigm of a Louisiana-law-informed Trust Agreement and the Trust Agreement as interpreted under Federal law. Simply put, there is no need to obtain discovery with respect or in relation to a paradigm that is incorrect as a matter of law.

Second, Taylor demands jurisdictional discovery by alleging that the exhibits to the United States' motion to dismiss go far beyond Taylor's complaint, creating factual issues worthy of discovery. Pl. Op. at 13. But our motion to dismiss relies, to an overwhelming degree, on Taylor's own allegations in its complaint, as well as documents Taylor cited in its complaint. Moreover, Taylor's request should be denied because Taylor does not expressly identify any documents it wishes to obtain, from whom it wishes to obtain information, or how, specifically, the information it seeks to obtain will affect the Court's jurisdictional analysis. And undercutting its own argument, Taylor actually admits that it currently possesses "facts and evidentiary materials *sufficient to directly refute*" the Government's misstatements concerning an alleged May 2015 insertion of an indefinite term into the Trust Agreement. *See* Pl. Mot. at 15.

Accordingly, because neither of Taylor's overarching rationales for jurisdictional discovery withstands scrutiny, this Court should deny Taylor's motion.

## ARGUMENT

### I.   STANDARD OF REVIEW

A trial court has discretion whether to permit jurisdictional discovery, and "'[a]n appellate court will not interfere with the trial court's refusal to grant discovery except upon the clearest showing that the dismissal resulted in actual and substantial prejudice to the litigant; such a refusal is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.'" *Autogenomics, Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012, 1023 (Fed. Cir. 2009) (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)); *see also Smith v. United States*, 495 Fed. Appx. 44, 49 (Fed. Cir. 2012); *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1342 (Fed. Cir. 2008). Thus, "[a] decision to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant." *Laub v. United States Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). "Prejudice is established if there is a reasonable probability that the outcome would have been different had discovery been allowed." *Id.*

Nor is it an abuse of discretion to deny jurisdictional discovery where the request for discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). Similarly, where a plaintiff has "failed to explain with sufficient specificity how discovery would help him overcome the various jurisdictional bars to his suit," the United States Court of

Appeals for the Federal Circuit has held that the denial of a discovery request was not an abuse of discretion. *Smith*, 495 Fed. Appx. at 49; *see also Haber v. United States*, No. 15-2078-cv, 2016 WL 2942370 at *6 (2d Cir. May 20, 2016) ("a district court does not abuse its discretion if it denies jurisdictional discovery where a plaintiff 'failed to show how the information [she] hoped to obtain from this discovery would bear on the critical issue' for jurisdiction.") (quoting *Gualandi v. Adams*, 385 F.3d 236, 245 (2d Cir. 2004)); *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1064 (Fed. Cir. 2012) (no abuse of discretion in denying jurisdictional discovery when the Court concluded "that each claim was dismissed for reasons that could not be remedied by discovery"); *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235-36 (Fed. Cir. 2010) ("a trial court may deny jurisdictional discovery 'when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction'") (citing *Am. W. Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989)).

Furthermore, jurisdictional discovery should be denied "in the absence of some specific indication regarding what facts additional discovery could produce that would affect the court's jurisdictional analysis." *Al Maqaleh v. Hagel*, 738 F.3d 312, 325-26 (D.C. Cir. 2013); *see also Cheyenne Arapaho Tribes of Okla. v. United States*, 558 F.3d 592, 596-97 (D.C. Cir. 2009) (finding that the district court did not abuse its discretion in denying jurisdictional discovery given the absence of any specific indication from the plaintiffs regarding what facts additional discovery could produce that would affect the court's jurisdictional analysis). Thus, a party seeking discovery "must set forth 'with some precision,' the evidence it hopes to obtain, how this evidence would likely disclose issues of material fact, and why it is unable to access such evidence without further

discovery." *Clear Creek Cmty Servs. Dist. v. United States*, 100 Fed. Cl. 78 (2011)

(citing *Padilla v. United States*, 58 Fed. Cl. 585, 593 (2003)); *see also Freeman v. United*

*States*, 556 F.3d 326, 341-42 (5th Cir. 2009) (party seeking jurisdictional discovery

"'may not simply rely on vague assertions that additional discovery will produce needed,

but unspecified facts'") (quoting *Kelly v. Syria Shell Petroleum Dev. B.B.*, 213 F.3d 841,

852 (5th Cir. 2000)).  To that end, "a bare assertion that jurisdictional discovery 'would

likely' reveal facts necessary to support jurisdiction is 'entirely speculative, and [w]hen a

plaintiff offers only speculation or conclusory assertions about [the existence of facts

demonstrating jurisdiction,] a court is within its discretion in denying jurisdictional

discovery.'" *F.D.I.C. v. Dosland*, 50 F. Supp. 3d 1070, 1077 (N.D. Iowa 2014) (quoting

*Viasystems, Inc. v. EBM-Papst St Georen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir.

2011)); *see also Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. Appx. 86, 104-05 (10th Cir.

2012) (upholding district court's denial of jurisdictional discovery when plaintiffs' broad

discovery requests were not tailored to address the limited jurisdictional question of

personal jurisdiction and where plaintiffs did not state what specific documents they

would have sought in discovery).

## II.     THIS COURT SHOULD DENY TAYLOR'S REQUEST FOR JURISDICTIONAL DISCOVERY

This Court should reject Taylor's demand for jurisdictional discovery because, in

the first instance, its request is based upon the presumption of a legally incorrect

interpretation of its obligations under the Trust Agreement (using Louisiana law).  But

because, as a matter of law, Federal law governs the Trust Agreement, there is no basis

for undertaking "jurisdictional discovery" on the incorrect presumption that Louisiana

law governs.

Furthermore, this Court should reject Taylor's jurisdictional discovery demand because the United States' motion to dismiss is based, overwhelmingly, on Taylor's own allegations in its complaint, and Taylor's admissions in the documents it cited in its complaint. And Taylor fails to provide information concerning the specific information it wants, specifically from whom "in the Government" it wishes to obtain information, from which third parties it wishes to obtain information, or how, specifically, the information would affect this Court's jurisdictional analysis.

### A. In Seeking Jurisdictional Discovery, Taylor Proposes A Legal Paradigm That Incorrectly Presumes The Application Of Louisiana Law In The Interpretation Of The Trust Agreement

Taylor argues that "the Government relies upon factual assertions that go well beyond and in many respects conflict with" Taylor's complaint. Pl. Mot. at 8; *see also* Pl. Mot. at 2-3, 13. Based on this argument, Taylor then asserts that "[t]he Government's reliance on these factual assertions entitles Taylor to conduct discovery in advance of the Court's consideration of the motion to dismiss." Pl. Mot. at 8.

But in explaining the allegations that conflict with its complaint, Taylor invokes as factual disagreements disputes that are in fact a legal dispute concerning whether Louisiana or Federal law controls the interpretation of Taylor's decommissioning and associated funding obligations.

Taylor argues that its obligations under the Trust Agreement were, pursuant to Louisiana contract law, to exist only for a "reasonable" period. Compl. ¶¶ 4, 67-69, 74-79. That is, Taylor argues, pursuant to Louisiana contractual law principles, where the Trust Agreement has an indefinite period for performance, that indefinite period must be limited to a "reasonable" period. *See, e.g.,* Compl. at ¶¶ 4, 68-69, 75, 78.

7

For example, Taylor argues that the United States misspoke when we asserted that the Trust Agreement provided for "'an indefinite time for performance because there is no pronounced deadline for completing the decommissioning activity.'" Pl. Mot. at 14 (quoting Def. Mot. to Dismiss at 3). Instead, Taylor argues that it is not the Trust Agreement that provides for "an improper indefinite time for performance," but rather a 2015 "unilateral impos[ition of] an indefinite term for Taylor's performance" by the Government, specifically as communicated through the Government's 2015 "U.S. Views" document and its 2015 Bureau of Safety and Environmental Enforcement (BSEE) web postings. Pl. Mot. at 14.[1]

Taylor argues that this indefinite term was literally "inserted" into the Trust Agreement: "In its Complaint, Taylor asserts a claim for breach of contract arising from the Government's *unilateral insertion of an indefinite term* for Taylor's performance." Pl. Mot. at 1 (emphasis added); *see also id.* at 16 ("unilateral insertion of an indefinite term"). But Taylor cannot cite to any "amendment" to the Trust Agreement or any other literal insertion of any additional term – because there has not been any written amendment or change in the Trust Agreement. Instead, the dispute between Taylor and the United States is fundamentally based upon differing views on the law governing the

---

[1] *See* Pl. Mot. at 7 (noting a "May 2015" written communication from the Government), *id.* at 16 (noting that the "U.S. Views Document and BSEE web postings in May 2015 served to put Taylor on notice of the Government's breach of contract by its unilateral insertion of an indefinite term for Taylor's performance for the remaining Obligations under the Trust Agreement."). The May 2015 document Taylor references is attached as Exhibit M to the United States' motion to dismiss. *See* Def. Mot. to Dismiss at Ex. M (May 14, 2015 "U.S. Views on the Status of Taylor Energy Company's Obligations at Well Site MC-20 and Taylor Energy's Ongoing Oil Spill"); *see also id.* at Ex. N (BOEM Fact Sheet, Taylor Energy Oil Discharge at MC-20 Site and Ongoing Response Efforts (May 2015)).

interpretation of *an unchanged Trust Agreement*, with Taylor arguing incorrectly that Louisiana law should dictate the interpretation of its decommissioning obligations under the Trust, and with the United States asserting that Federal law controls.

Thus, when Taylor argues that a new indefinite term has been "inserted" into the Trust Agreement (Pl. Mot. at 1, 16), this is, as a matter of fact, simply not the case. And this Court is under no obligation to accept Taylor's unfounded allegations as true for the purposes of deciding either the Government's motion to dismiss, or Taylor's demand for jurisdictional discovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (labels, conclusions, and conclusory allegations are not entitled to the assumption of truth); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor do the "2015 US Views document" or "2015 BSEE web postings" state that they are creating new obligations for Taylor under the Trust Agreement. *See* Def. Mot. to Dismiss at Exs. M and N; *see also id.* at Ex. O (Coast Guard Fact Sheet). To the contrary, these documents focus on Taylor's longstanding obligations under Federal law that predate, survive, and are secured by the Trust Agreement.

Taylor's description, however, is based upon Taylor's underlying and fundamentally incorrect legal presumption that Louisiana – and not Federal – law controls the interpretation of the decommissioning obligations addressed in the Trust Agreement and that, under Louisiana law, the term of the contract should be limited to what it alleges is a "reasonable" period of time. That is, under Taylor's Louisiana-law-based interpretation, the Trust has a term limit, which Taylor argues has been breached

by the Government's May 2015 communication to Taylor that Taylor has ongoing

decommissioning obligations secured by the Trust Agreement.[2]

But, in applying Federal law to interpret the Trust Agreement's terms, we assert

that there is no Louisiana-law-derived "reasonable period" time limitation to Taylor's

decommissioning obligations, nor its associated financial security obligations under the

Trust.  Instead, pursuant to the plain terms of governing Federal law, Taylor remains

strictly liable and bound to fulfill its decommissioning obligations until those obligations

have been met, and the plain terms of the Trust Agreement provide for the legally-

required financial security to remain in place until then.  Specifically, the Trust

Agreement requires that Taylor (through the Trust) maintain funds to perform the

decommissioning activities until it has met all its obligations to "permanently plug and

abandon 25 wells . . . in accordance with 30 CFR 250.1710-1717" and "remove

contaminated soil in accordance with 30 C.F.R. 250.300 (Subpart C – pollution

prevention and control." *See* Compl. Ex. 1 at 20-21 (Schedule A); *see also* Ex. 1 at

§§ 4.5, 6.8.  Nonetheless, to address the difference between these two interpretive

paradigms – one using Federal law and one using State law – Taylor now argues that it

needs to conduct jurisdictional fact discovery.  Specifically, Taylor states that, to

"directly refute these types of misstatements by the Government" concerning whether the

---

[2]  In that May 2015 communication (specifically, the "U.S. Views on the Status of Taylor Energy Company's Obligations at Well Site MC-20"), the Government stated that "[n]o reversion or partial reversion of Trust funds is warranted until the oil spill is permanently stopped and decommissioning work and related oil containment/removal work is completed." Def. Mot. to Dismiss at Ex. N at ¶ 10.

contract had an indefinite term or the Government inserted an indefinite term, it is entitled to "the benefit of discovery." Pl. Mot. at 15.[3]

But Taylor's "jurisdictional discovery" request is improper and should be denied because it is based on a legally incorrect understanding of the Trust Agreement. And Taylor is not "entitled" to obtain jurisdictional discovery pertaining to a theory that is invalid as a matter of law. *See, e.g., Sioux Honey*, 672 F.3d at 1062-64 (noting that, where plaintiff failed to state a claim of relief that is plausible on its face, the trial court did not abuse its discretion in denying plaintiff's motion to take jurisdictional discovery); *see also Haber*, 2016 WL 2942370 at *6 (upholding trial court's denial of jurisdictional discovery when the request "is based entirely on conclusory and implausible allegations"); *Medical Solutions, Inc. v. C Change Surgical LLC*, 541 F.3d 1136,1142 (Fed. Cir. 2008); *Best Van Lines, Inc. v. Walker,* No. 03 Civ. 6585, 2004 WL 964009, at *7 (S.D.N.Y. May 5, 2004) (Lynch, J.), *aff'd,* 490 F.3d 239 (2d Cir. 2007) (jurisdictional discovery would have been denied had it been requested "because the plaintiff has failed to establish a prima facie showing of jurisdiction").

Given that Taylor's request for jurisdictional discovery is based upon Taylor's incorrect allegations concerning the imposition of a new "indefinite term" into the Trust Agreement – which only makes sense under a Louisiana law interpretation of the Trust Agreement – this Court must first determine whether Federal law or Louisiana law applies to the correct interpretation of the Trust Agreement's provisions concerning

---

[3]  Certainly, any discovery of extrinsic evidence for the purpose of interpreting the meaning of the Trust Agreement is not warranted, as a matter of law. *See, e.g., Abbot Point of Care, Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1033-34 (Fed. Cir. 2012) ("Extrinsic evidence simply cannot change or contradict [a] contract's language").

11

Taylor's decommissioning obligations.[4]  Certainly, the Court's determination in this regard is a legal matter.  Indeed, Taylor has acknowledged that the United States' entire 12(b)(6) argument, which is based upon the notion that Federal law applies to the interpretation of the Trust Agreement, is a legal issue with respect to which it requests no jurisdictional discovery.  *See* Pl. Mot. at 3 n.2 ("Because the Government's Rule 12(b)(6) motion is subject to resolution as a matter of law, Taylor does not presently seek to conduct discovery directed to it.").

Here, Federal law, as reflected in the Trust Agreement, is structured to ensure that Taylor remains responsible for decommissioning until it is completed and that sufficient funds are secured to ensure Taylor's performance of its decommissioning obligations. And contrary to Taylor's allegations, Louisiana law, as interpreted by Taylor, cannot apply either directly or as surrogate Federal law to override those results dictated by Federal law.[5]  Accordingly, as further detailed below, in reaching its decision on Taylor's

---

[4]  Although finding that Federal law applies to the interpretation of the decommissioning obligations addressed in the Trust Agreement is a predicate to our motion to dismiss pursuant to Rule 12(b)(6), certainly our request here is not that the Court resolve our 12(b)(6) argument in connection with plaintiffs' motion for jurisdictional discovery, but only that the Court resolve whether Federal or State law applies to the interpretation of the Trust for the purposes of resolving whether jurisdictional discovery is warranted.  *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-95 (1998) (jurisdictional issues must be decided as a threshold matter, even when a case may be resolved easily on the merits); *accord Advanced Aerospace Techs., Inc. v. United States*, 113 Fed. Cl. 265, 271 (2013).

[5]  In resolving the Government's motion to dismiss, this Court is under no obligation to accept as true Taylor's conclusory allegation that Louisiana law applies to the interpretation of the decommissioning obligations addressed in the Trust Agreement. Indeed, the Court "is not obligated to accept legal conclusions as true." *United States Enrichment Corp. v. United States*, 117 Fed. Cl. 548, 554 n.12 (2014) (citing *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012)); *see also Iqbal*, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint

jurisdictional discovery request, this Court should determine, in the first instance, whether Federal or State law governs the interpretation of Taylor's decommissioning obligations addressed in the Trust Agreement.

> **1.   Federal Law, Not Louisiana Law, Controls The Disposition Of The Trust Funds Securing Taylor's Decommissioning Obligations**

The central premise underlying Taylor's complaint – and its request for jurisdictional discovery – is that Louisiana law controls this Court's review of the Trust Agreement. This premise is incorrect. Louisiana law cannot control – even though the contract's "choice of law" clause references Louisiana law – because Louisiana law is inconsistent with applicable Federal law, specifically, the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. §§ 1331-56b, and its implementing regulations. The analysis here is a three step process.

*First*, the OCSLA provides that Federal law applies to matters concerning activities on the OCS:

> The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed . . . to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State[.]

43 U.S.C. § 1333(a)(1). *See, e.g., Rodrigue v. Aetna Cas. & Surety Co.*, 395 U.S. 352, 356-57 (1969) (pursuant to OCSLA, Federal law is to be applied to the OCS); *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 495 (5th Cir. 2002).

---

is inapplicable to legal conclusions"); *accord Martin v. United States*, 102 Fed. Cl. 779, 784 (2012); *Striplin v. United States*, 100 Fed. Cl. 493, 497 (2011).

Furthermore, in establishing that United States district courts have jurisdiction over OCSLA-related claims, Congress described the broad substantive reach of OCSLA in providing the applicable law:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies *arising out of, or in connection with* (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit under this subchapter.

43 U.S.C. § 1349(b)(1) (emphasis added).

The courts have determined that OCSLA's Federal law regime applies broadly to contract claims focused upon activity to be performed, for the most part, at OCSLA situses. *See, e.g.*, *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 787 (5th Cir. 2009) ("a contractual indemnity claim (or any other contractual dispute) arises on an OCSLA situs if a majority of the performance called for under the contract is to be performed on stationary platforms or other OCSLA situses"); *Laredo Offshore Constructors v. Hunt Oil Co.*, 754 F.2d 1223, 1228-29 (5th Cir. 1985). That is, the Federal OCSLA regulatory regime is not limited to acts that literally occurred on the outer continental shelf, but also includes cases and controversies "arising out of or in connection with" any "operation" conducted on the outer continental shelf. *See* 43 U.S.C. § 1349(b)(1).

Thus, the courts have concluded that OCSLA should be broadly construed so as to be "'extended to the entire range of legal disputes that [Congress] knew would arise relating to resource development on the Outer Continental Shelf.'" *EP Operating*

14

*Limited Partnership v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) (quoting *Laredo*,

754 F.2d at 1228). And in *EP*, the Court of Appeals for the Fifth Circuit recognized that

OCSLA should apply to disputes concerning terminated drilling operations, specifically

invoking a district court case involving a dispute over a contract dealing with the raising

of a sunken platform (which was toppled by a hurricane). *EP*, 26 F.3d at 568 (citing

*Fluor Ocean Services Inc. v. Rucker Co.*, 341 F. Supp. 757, 758-60 (E.D. La. 1972)). In

*Fluor*, the district court stated that the OCSLA Federal law regime applies even with

respect to "controversies which may be only *indirectly* connected with operations on the

outer Continental Shelf conducted for the purpose of developing natural resources."

*Fluor*, 341 F. Supp. at 760 (emphasis in original). Thus, "the Fifth Circuit interprets the

reach of the OCSLA in an extremely broad manner" that reaches "acts or omissions [that]

occur on land." *BP Exploration & Prod., Inc. v. Callidus Tech's, L.L.C.*, No. Civ. A. 02-

2318, 2003 WL 193450 at *4 (E.D. La. Jan. 27, 2003).

      Here, the Trust Agreement's purpose is to provide funds to "fulfill certain

obligations to plug and abandon wells, remove a portion of the platform and facilities,

clear the seafloor of obstructions, and take corrective action associated with wells and

facilities on [the Taylor leases]." Compl. Ex. 1 at 1; Compl. ¶ 20. The cited obligations

derive from Taylor's preexisting responsibilities under OCSLA and its implementing

regulations. *See, e.g.*, 30 C.F.R. Part 250, subpart Q. Moreover, the Trust Agreement

was established to satisfy regulations of the Department of the Interior (DOI) that are

meant to ensure that (1) wells and facilities are properly decommissioned to stop and

prevent oil leaks; and (2) lessees can finance their regulatory plugging and abandonment

obligations. *See, e.g.*, 30 C.F.R. Part 250, subpart Q (Decommissioning Activities); 30

C.F.R. Part 250, subpart C (Pollution Prevention and Control); 30 C.F.R. § 556.56

(Lease-specific abandonment accounts).

Accordingly, OCSLA applies to the Trust Agreement here.

**Second**, OCSLA provides that Federal law will adopt the civil laws of an adjacent

State as the Federal law, but only if the State law is not inconsistent with Federal laws

and regulations as set forth by DOI:

> To the extent that they are applicable *and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted,* the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf[.]

*43 U.S.C.* § 1333(a)(2)(A) (emphasis added). *See, e.g., Offshore Logistics, Inc. v.*

*Tallentire*, 477 U.S. 207, 217 (1986) ("Within the area covered by OCSLA, federal law

controls but the law of the adjacent State is adopted as surrogate federal law to the extent

that it is not inconsistent with applicable federal laws or regulations."); *Rodrigue*, 395

U.S. at 356 (OCSLA provides that the applicable law is the "federal law of the United

States, applying state law only as federal law and then only when not inconsistent with

applicable federal law.").

Here, Taylor's invocation of Louisiana contract law results in a reading of the

Trust Agreement that is inconsistent with the controlling Federal law and regulations.

And it is inconsistent with the purpose and intent of the Trust Agreement, which was

established pursuant to Federal regulatory law to ensure that sufficient funds remain

available for decommissioning of the MC-20 site in accordance with Taylor's regulatory obligations. Indeed, Taylor's reading of Louisiana law renders the Trust Agreement a nullity, requiring its dissolution. *See, e.g.*, Compl. at ¶ 5 ("Louisiana law therefore requires that the Trust Agreement be dissolved, entitling Taylor to the release of its funds from the Trust Account."). Such a result would be inconsistent with the requirements of OCSLA and its implementing regulations.

OCSLA and DOI regulations implementing OCSLA extend to the entire range of legal issues relating to resource development on the OCS. They require decommissioning of the MC-20 site and the elimination of the oil discharge at the site. They likewise require Taylor to maintain adequate financial security to assure that these requirements are met. Thus, the Trust Agreement was established, pursuant to DOI regulation (30 C.F.R. § 556.56), to satisfy these requirements of Federal law.

Louisiana law, as described by Taylor, would render the Trust Agreement a nullity, eliminating the required security and preventing the use of the trust funds for decommissioning and the elimination of the oil discharge. Taylor's presentation of Louisiana law is therefore inconsistent with Federal law and cannot be used by this Court to interpret or administer the Trust Agreement in the manner that Taylor advocates. *See* 43 U.S.C. § 1333(a)(2)(A); *Offshore Logistics*, 477 U.S. at 217; *Rodrigue*, 395 U.S. at 356; *Union Tex. Petr. Corp. v. PLT Eng'g, Inc.*, 865 F.2d 1043, 1047 (5th Cir. 1990) ("But for adjacent state law to apply as surrogate federal law under OCSLA . . . . [t]he state law must not be inconsistent with Federal law."); *Laredo*, 754 F.2d at 1228. Instead, Federal law, specifically regulations issued by DOI, dictates the proper administration of the Trust Agreement.

The Federal law to be applied, when State law is inconsistent with OCSLA, is the "Constitution and laws of the United States, [and the] regulations of the Secretary of the Interior." *Rodrigue*, 395 U.S. at 357 (discussing S. Rep. No. 411 of the committee on Interior and Insular Affairs, 83d Cong., 1st Sess., 11 (1953)); *see also* 43 U.S.C. § 1333(a)(2)(A). That is, the law to be applied is not necessarily Federal common law in the first instance, but Federal statutory and regulatory law, specifically, the regulations of the DOI. *See, e.g.*, *Walter Oil & Gas Corp. v. NS Group, Inc.*, 867 F. Supp. 549, 553 (S.D. Tex. 1994) (finding "that the phrase 'other Federal laws' in § 1333(a)(2)(A) refers not to Federal common law, but rather to Federal statutory law"). Here, that law preserves Taylor's obligation to decommission the MC20 site until it is completed, and requires Taylor to maintain adequate financial security to meet those obligations.

*Third*, the fact that the parties agreed to a "choice of law" clause selecting Louisiana law as the law to be used in governing and construing the Trust Agreement in no way alters this conclusion. *See* Compl. Ex. 1 at § 6.9.[6] Where, as here, a party invokes a contractual choice of law provision to achieve a result that is inconsistent with OCSLA and DOI regulations, that choice of law provision is not given effect by the courts. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 485 (1981); *Texaco Exploration & Production, Inc. v. AmClyde Engineered Products*, 448 F.3d 760, 772 (5th Cir. 2006) (statutory choice of law rule in OCSLA is "not subject to exception by the parties' agreement") *rehearing denied, amended on rehearing* 453 F.3d 652 (5th Cir. 2006); *Union Tex. Petr.*, 865 F.2d at 1050 (OCSLA is a congressionally mandated choice

---

[6] "Governing Law and Jurisdiction. This Trust Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana without giving effect to that state's conflicts of laws rules, but the parties consent to the jurisdiction of the federal courts to resolve any dispute arising under the Trust Agreement." Compl. Ex. 1 at § 6.9.

of law provision which preempts any contrary choice of law provision found either in state law or in the contract at issue). *See also Matte v. Zapata Offshore Co.*, 784 F.2d 628, 631 (5th Cir. 1986) (rejecting contract's choice of law clause where it violated federal policy expressed in OCSLA); *Alleman v. Omni Energy Services Corp.*, 434 F. Supp. 2d 405, 409 (E.D. La. 2006) ("parties cannot contract around OCSLA's statutory choice of law provision."), *aff'd in part* 580 F.3d 280 (5th Cir. 2009); *Fuselier v. Sea Boat Rentals, Inc.*, No. 06-4488, 2007 WL 2713278 at *3 (E.D. La. Sept. 14, 2007); *BP Exploration & Production, Inc. v. Callidus Tech., LLC*, No. Civ. A. 02-2318, 2003 WL 193450 at *2 (E.D. La. 2003); *AGIP Petroleum Co. v. Gulf Island Fabrication*, 920 F. Supp. 1330, 1342 (S.D. Tex. 1996) ("contractual choice-of-law provisions are ineffective" where OCSLA applies). *Cf. Offshore Logistics*, 477 U.S. at 227 (noting that federal maritime law displaces state common law remedies and that parties may not elect which law will govern); *accord Krossa v. All Alaskan Seafoods, Inc.*, 37 P.3d 411, 416 n.10 (Alaska 2001).

Accordingly, despite the Trust Agreement's choice-of-law clause, Louisiana law cannot be relied upon to overturn the outcome dictated by OCSLA and its implementing regulations. Instead, the terms of the Trust Agreement must be interpreted in accord with Federal law, including, specifically, DOI regulations requiring Taylor to fully decommission the MC-20 site and pursuant to which the Trust was established as a means to provide sufficient dedicated funds as security to cover those decommissioning costs. *See* 30 C.F.R. Part 250, subparts C and Q; 30 C.F.R. § 556.56.

### 2.    The Trust Agreement Is In Complete Accord With Federal Law

Pursuant to Federal law, Taylor remains liable for decommissioning its facilities until decommissioning is complete and the problem of the contaminated soil has been addressed – or until the DOI provides Taylor with a "departure" from these requirements. Furthermore, the Trust Agreement, as a lease-specific abandonment account, exists to satisfy Federal regulations requiring a lessee to provide security demonstrating its capacity to pay for decommissioning costs. *See* 30 C.F.R. § 556.56; *see also* Def. Mot. to Dismiss at 11-12.

There can be no doubt that OCSLA requires lessees to pursue their operations and to decommission their facilities in a manner that ensures the protection of the environment. *See* 43 U.S.C. §§ 1332, 1332(a)(2), 1334, 1348(a), and 1348(b)(2); *see also* Def. Mot. to Dismiss at 12-13.  Notably, OCSLA does not limit a lessee's liability for covering actual decommissioning costs, nor does it limit the length of time that a lessee remains responsible for decommissioning.  In this regard, OCSLA is consistent with the Federal Water Pollution Control Act (Clean Water Act), 33 U.S.C. §§ 1251-1376 (1982), which further mandates that (1) there be "*no discharges of oil or hazardous substances into or upon the navigable waters of the United States,*" (33 U.S.C. § 1321) (emphasis added); (2) the cost of cleanup be borne by the owners of the facilities discharging oil; and (3) facility owners face strict liability for the pollution save for only a handful of exceptions. *See* Def. Mot. to Dismiss at 13 (citing 33 U.S.C. § 1321(i)). And OCSLA is consistent with the Oil Pollution Act of 1990 (OPA), 33 U.S.C. §§ 2701-62 (2010), which provides that an offshore lease operator who pollutes is a "responsible

party" and is liable for all removal costs. *See id.* (citing 33 U.S.C. §§ 2701(31), 2701(32)(C), 2702(a), 2702(b)(1)).

Furthermore, under the authority given to it by OCSLA, BSEE's regulations require lessees to prevent oil discharges and to take immediate corrective action when pollution has occurred. *See* 30 C.F.R. Part 250, subpart C; *see also* Def. Mot. to Dismiss at 10-11. Although BSEE's regulations generally require a lessee to complete its decommissioning activities within one year of the termination of its lease, the regulations do not limit the duration of the decommissioning obligation if the lessee is unable to complete its decommissioning within a year of termination, and in fact expressly provide that lessees remain "liable for meeting decommissioning obligations . . . until each obligation is met." *See* 30 C.F.R. §§ 250.1700-1703, 250.1710, 250.1725; Compl. § 14.

And to ensure that funds are available to satisfy a lessee's decommissioning obligations, regulations of the Bureau of Ocean Energy Management (BOEM), also issued pursuant to OCSLA, require lessees to post a bond or provide other forms of financial assurance – such as a lease-specific abandonment account – to ensure that funds are available to cover the decommissioning costs. *See* 30 C.F.R. §§ 556.52, 556.53(a), 556.53(b), 556.53(e), 556.56, 556.58(d)(2)(i); *see also* Def. Mot. to Dismiss at 11-12.

The Trust Agreement, which creates a lease-specific abandonment account under 30 C.F.R. § 556.56, was implemented to satisfy the requirements of OCSLA and BSEE and BOEM regulations, all with the objective that an OCS lessee decommission its facilities so that there is *no potential for leaks* into the navigable waters of the United States, while requiring the lessee to provide financial assurance, through the completion of the decommissioning tasks, so the decommissioning costs are covered.

21

Thus, the termination clause of the Trust Agreement provides that the Trust will remain in effect pending Taylor's "compliance with all Obligations" (unless there is otherwise a written agreement between Taylor and the United States). Compl. Ex. 1 at § 6.8. "Obligations" is a defined term under the Trust Agreement, and it means "the duties and costs of [Taylor] pertaining thereto to abandon wells, remove the platform and other facilities, clear the seafloor of obstructions, and take corrective action associated with wells as set forth in Schedule A attached hereto arising pursuant to the terms of the Leases and applicable federal regulations related to such Leases." Compl. Ex. 1 at § 1.2(d). The Trust Agreement is clear that the Obligations have to be completed "in material compliance with all applicable federal laws and regulations . . . [and with] the terms and conditions of the Lease(s)." Compl. Ex. 1 at § 4.5; Compl. ¶ 29. And to satisfy the Obligations pursuant to the Trust Agreement, Taylor must demonstrate that it completed all the required Work under Schedule A of the Trust Agreement until such time that it can demonstrate that there is "***no detectable leakage***." Compl. Ex. 1 at § 4.7 (emphasis added).

Therefore, the Trust Agreement, including its requirement that Taylor remain obligated to decommission the wells, whether undertaken now or in the future, and to maintain financial security in the meantime, is a valid embodiment of Federal laws and regulations. Thus, contrary to Taylor's arguments in its complaint – and in its motion for jurisdictional discovery – the Trust Agreement has always reflected Taylor's ongoing obligation to complete its decommissioning work in accordance with Federal law. There is no Louisiana law-based "reasonable" period limitation to Taylor's performance of its decommissioning or security obligations under Federal law. Accordingly, this Court

22

should reject Taylor's attempt to employ Louisiana law as the basis for its request to obtain jurisdictional discovery.

Recognizing that the issue of whether Louisiana or Federal law controls administration of the Trust Agreement is a purely legal question, Taylor concedes that it does not need discovery concerning the Government's motion to dismiss under 12(b)(6), because the 12(b)(6) motion, "in the end . . . presents only a legal issue." Pl. Mot. at 3 n.2. In making this statement, Taylor cites to two cases that it argues indicate that Louisiana law should govern the interpretation of the Trust Agreement. *Id.* (citing *GOM Shelf, LLC v. Sun Operating Ltd. P'ship*, No. 4:06-cv-3444, 2008 WL 901482 (S.D. Tex. March 31, 2008) and *Nippon Oil Exploration U.S.A. Ltd. v. Murphy Exploration & Production Co.-USA*, Civ. No. 10-2850, 2011 WL 2456358 (E.D. La. June 15, 2011)). But Taylor is incorrect; neither of these cases supports Taylor's claim that Louisiana law and not Federal law controls the interpretation of the decommissioning and security obligations reflected in the Trust Agreement.[7]

*GOM Shelf* involved a dispute that concerned two lessees that jointly and equally operated an oil and gas lease located on the Outer Continental Shelf. They each received their lessee interests from predecessor lessees. *GOM Shelf*, 2008 WL 901482 at *1-4.

---

[7] Taylor also cites to the Supreme Court's decision in *United States v. Winstar*, 518 U.S. 839 (1996), for the proposition that contracts between the United States and private parties should be governed "by the law applicable to contracts between private individuals." Pl. Mot. at 3 n.2. But *Winstar* did not concern an OCSLA-related matter. Indeed, Taylor points to no case in which any court has held that, when the United States is a party to an OCSLA-related contract, the *Winstar* holding trumps the application of OCSLA's choice of law provisions, which require the use of Federal law where state law is inconsistent with Federal laws. *See* 43 U.S.C. § 1333(a)(2)(A). Taylor's argument also fails because, even if "the law applicable to private parties" were applied here, Federal law would still be applied because, under OCSLA, private parties in an OCSLA-related matter are also required to adhere to Federal law when State law conflicts with Federal law. *Id.*

When one of the partners went bankrupt, the remaining viable partner, GOM, paid for the entire plugging and abandonment costs for the lease. *Id.* at *4. To recoup half of its plugging and abandonment costs, GOM sued the previous assignors of its partner's lease interest. *Id.* At issue was whether GOM could sue its partner's predecessors for the plugging and abandonment costs. The regulations of the Minerals Management Service (MMS) provided that the Director of the MMS could require an assignor to perform decommissioning where its successor failed to, but the regulations did not expressly state that the private co-owner of the lease could bring a cause of action against its partner's assignors.

The Court first noted that "federal law governs actions under OCSLA to the extent that applicable federal law exists." *Id.* at *6. Because there was a gap in the Federal regulatory laws concerning this issue, the court held that Texas law could provide a private cause of action, noting that Texas law was "not inconsistent with federal law." Therefore, rather than supporting the notion that Louisiana law should govern the Trust Agreement, this case is entirely consistent with our assertion that Federal law applies here, and while Louisiana law might in some circumstances serve as the source of Federal law, it cannot be the source here because Louisiana law as set forth by Taylor *is inconsistent* with the Federal law underlying the Trust Agreement. Furthermore, here, unlike the situation in *GOM Shelf*, there is no gap in Federal law pertaining to the decommissioning and financial security obligations embodied within the Trust Agreement. Instead, those obligations as reflected in the Trust Agreement are the embodiment of an extensive array of Federal statutes and regulations.

Taylor's invocation of *Nippon Oil* fares no better. Taylor quotes *Nippon Oil* for the notion that, under OCSLA, "'the court must apply the law of the state that is adjacent to the area of the Outer Continental Shelf upon which the dispute arose, *to the extent that it does not conflict with federal law.*'" Pl. Mot. at 3 n.2 (citing *Nippon Oil*, 2011 WL 2456358 at *3) (emphasis added). But here, Louisiana law, as interpreted by Taylor, *does conflict* with the Federal law that is embodied in the Trust Agreement. Thus, *Nippon Oil* is entirely consistent with our assertion that the Trust Agreement should be interpreted using Federal law, and not, as Taylor's motion for jurisdictional discovery presumes, Louisiana law.

Given the foregoing, this Court should find that Federal law governs the interpretation of the decommissioning and financial security obligations reflected in the Trust Agreement, and having found so, deny Taylor's demand for jurisdictional discovery. Taylor's attempt to obtain discovery based upon and in relation to its legally incorrect and invalid interpretation of the Trust Agreement should be rejected by this Court. *See, e.g., Haber,* 2016 WL 2942370 at *6 (plaintiff must show how the information she hoped to obtain from this discovery would bear on the critical issue for jurisdiction); *Al Maqaleh*, 738 F.3d at 325-26 (jurisdictional discovery should be denied "in the absence of some specific indication regarding what facts additional discovery could produce that would affect the court's jurisdictional analysis."); *Sioux Honey*, 672 F.3d at 1064 (no abuse of discretion in denying jurisdictional discovery when the Court concluded "that each claim was dismissed for reasons that could not be remedied by discovery"); *see also Nuance Commc'ns*, 626 F.3d at 1235-36; *Cheyenne*, 558 F.3d at 596-97.

**B.** **Jurisdictional Discovery Is Not Warranted Because The Government's Motion To Dismiss Relies Upon Taylor's Own Statements In Its Complaint, Documents Taylor Cited In Its Complaint, Taylor's Own Filing Before The IBLA, And Publicly Available Documents.**

Taylor's second rationale for demanding jurisdictional discovery is that the United States has gone far afield from the allegations in Taylor's complaint. *See, e.g.,* Pl. Mot. at 8, 9, 13. Again, Taylor is incorrect.

Our motion to dismiss is overwhelmingly based upon Taylor's own admissions in its complaint, as well as the documents that *Taylor* cited in its complaint. For example, with respect to our assertion of the statute of limitations, we primarily rely upon the allegations in Taylor's complaint at paragraphs 45-46. *See* Def. Mot. to Dismiss at 45-46. And all of the documents we rely upon in supporting this assertion are cited by Taylor in its complaint, with the exception of a single regulatory document (the Well Activity Report) that we cite to establish a date certain for the employment of Taylor's newly-invented well intervention technologies.

Indeed, apart from the exhibits attached to Taylor's complaint (specifically the Trust Agreement and the Agreement to Implement Disbursement from the Trust Agreement), with the exception of the Well Activity Report, the exhibits we attached to our motion to dismiss were all cited or referenced by Taylor in its complaint, are publicly available, or involve the compilation of publicly available information:

- Exhibits A, B, and C (the MC-20 leases) – cited at Compl. ¶ 10.[8]

- Exhibit E – cited at Compl. ¶ 46.

- Exhibit F – cited at Compl. ¶¶ 48-53, 60, 87.

---

[8] In our motion to dismiss, we intentionally did not set forth an Exhibit D.

- Exhibit G – Taylor's own document – cited at Compl. ¶¶ 55-58, 60.

- Exhibit H – Taylor's own document (Notice of Appeal to the Interior Board of Land Appeals (IBLA) (with Department of the Interior transmittal cover letter)).

- Exhibit I – Taylor's own document – referenced at Compl. ¶ 45.

- Exhibit J – cited at Compl. ¶ 36.

- Exhibit K – compilation of publicly available data.

- Exhibit L – the Well Activity Report (used for the limited purpose of demonstrating the date that Taylor drilled its first intervention well using its new technology).

- Exhibit M – cited at Compl. ¶ 59.

- Exhibit N and O – publicly available documents supporting Exhibit M.

- Exhibit P – Government letter to Taylor, cited at Compl. ¶ 61.

Thus, Taylor's assertions that the Government has gone far afield from Taylor's complaint are incorrect; our motion to dismiss relies upon the allegations in Taylor's complaint and the documents cited in its complaint. Indeed, Taylor's alleged need for jurisdictional discovery is belied by its own comment that *it already possesses sufficient evidence* to address what Taylor characterizes as the United States' "recast[ing] and manipula[tion] of the factual allegations of Taylor's complaint." Pl. Mot. at 13. Specifically, in its motion, Taylor acknowledges that its *"own pleadings and the documents submitted by the Government* in support of its motion to dismiss *provide Taylor with facts and evidentiary material sufficient to directly refute"* the Government's purported recasting of Taylor's allegations. Pl. Mot. at 15 (emphasis added).

**C.    No Jurisdictional Discovery Is Needed To Resolve The Government's Motion To Dismiss Based Upon The Statute Of Limitations**

Taylor invokes the United States' assertion of the statute of limitations as a subject upon which it should be permitted jurisdictional discovery.  But for the same reasons noted above – that Taylor relies upon an invalid application of Louisiana law and that the United States has overwhelmingly relied upon Taylor's complaint and documents cited in its complaint – this Court should deny Taylor's request for discovery.

**1.    Jurisdictional Discovery Concerning The Statute Of Limitations Based Upon Taylor's Legally Invalid Reliance On Louisiana Law Is Not Warranted**

In discussing its requests for jurisdictional discovery with respect to the statute of limitations, Taylor argues that it "should be permitted to conduct jurisdictional discovery of the Government seeking specificity as to when the Government asserts each one of Taylor's four counts allegedly accrued and all of the events that the Government alleges occurred to fix its liability for breach of contract." Pl. Mot. at 15.  In explaining its confusion in this regard, Taylor reverts to its incorrect assumption that the term of the Trust Agreement is governed by Louisiana law and that the Government's alleged breach occurred in 2015 with the "unilateral insertion of an indefinite term for Taylor's performance of the remaining Obligations under the Trust Agreement." *Id.* at 16.  Thus, Taylor demands discovery concerning the "Government's unilateral imposition of an indefinite term for Taylor's performance," which Taylor argues must have "accrued before the Government's 2015 disclosure to Taylor that it had imposed that indefinite term." *Id.*

Again, however, Taylor's arguments emanate from an incorrect legal paradigm and a facially incorrect allegation that the Government "inserted" a new term into the

28

Trust Agreement. Federal law, not Louisiana law, governs this aspect of the Trust Agreement. The Trust Agreement was created pursuant to Federal law, and under Federal law Taylor remains liable for (1) its decommissioning obligations until they are met to the satisfaction of the Government, and (2) its financial security obligations until decommission is complete. There was no insertion or imposition of a new term to the Trust Agreement; it has always set forth and embodied these requirements.

### 2. Jurisdictional Discovery Concerning The Accrual Of The Statute Of Limitations Based On The Inability To Decommission The Oil And Gas Wells Using The Best Available Technology Is Not Warranted

Taylor also argues that it needs discovery because neither Taylor nor the Government had "knowledge that Taylor could not drill additional intervention wells or remove the contaminated soil 'in a manner that is safe'" until the issuance of the July 2013 CERA Report, which reported on the risks associated with engaging in further removal and decommissioning activities. Pl. Mot. at 16. But Taylor's own allegations in its complaint and the documents referenced by Taylor in its complaint disprove this argument. And certainly Taylor does not need jurisdictional discovery to determine what its own beliefs were with respect to an alleged inability to drill additional intervention wells or remove contaminated soil.

With respect to the accrual of its claim concerning the "impossibility" of decommissioning its wells using the then-existing "best available technology," Taylor argues that the Government has set forth contradictory facts and that Taylor should be permitted jurisdictional discovery "to question the Government regarding its inconsistent assertions about the availability of technology to decommission the MC20 wells." Pl. Mot at 17-18. Specifically, Taylor argues that the Government has alleged that by 2009

29

Taylor had invented new technology because in 2008 Taylor realized that the then-existing best available technology was not suitable to pursue well interventions. *Id.* Taylor then says that the Government contradicts itself by also acknowledging "that Taylor 'drilled its first two intervention wells using existing technology.'" *Id.*

But these two statements don't contradict each other. And Taylor doesn't need "to question the Government" regarding the juxtaposition of these two statements. In fact, the asserted discrepancy between the two statements is explained in large part by Taylor's failure to accurately describe the text of our motion to dismiss. Most importantly, however, Taylor doesn't need jurisdictional discovery because the United States' argument is based upon allegations set forth in Taylor's complaint and the statements in a report *that Taylor prepared*, which Taylor's complaint repeatedly cited.

First, Taylor's complaint states that "[t]o devise and drill the intervention wells, Taylor assembled a team of world-renowned experts *and invented new patented technologies*." Compl. ¶ 38 (emphasis added). And its complaint further states that Taylor's "response efforts have included *the development of new technologies* associated with drilling the intervention wells." *Id.* at 16 n.6 (emphasis added). Taylor acknowledges that the first two well interventions it pursued did not use these new patented technologies, both in its instant motion, and in a document it prepared, "Taylor Energy Company LLC MC20 Final Risk Assessment and Cost Estimate" (Taylor's FRACE Report), which Taylor repeatedly referenced in its complaint.[9] *See* Pl. Mot. at 17-18 ("Taylor successfully used existing technology for the first two intervention wells."); *see also* Def. Mot. to Dismiss at Ex. G at 42 ("Using existing technology at the

---

[9]   In its complaint, Taylor cites to the FRACE Report at paragraphs 55-58, and 60. Taylor acknowledges that it prepared the FRACE Report. *See* Compl. ¶ 56.

start of the intervention campaign, the well cost for the first well IW 21 was $56.8 million [and] [t]he second well IW19 was even higher at $65.7 million.").

Taylor's next intervention well, however, well A-16, involved the application of Taylor's newly-invented and patented technologies. And although Taylor ignores this fact in its brief, in our motion to dismiss we expressly noted that Taylor's FRACE Report states that Taylor "identified both process and technology opportunities, which if developed and applied, could substantially lower future intervention well costs. . . . *These changes were first applied on the third intervention well IW-16.*" Def. Mot. to Dismiss at Ex. G at 42-43 (emphasis added). We also noted, and provided evidence, in the form of a Government "Well Activity Report," that drilling the intervention well for the A-16 well started in November 2009. *See* Def. Mot. at 39 and Ex. L (which records that the beginning of drilling of the A-16 intervention well occurred on November 13, 2009). Thus, based on its own allegations in the complaint and its self-prepared report, it cannot be plausibly disputed *by Taylor* that Taylor did, in fact, invent new technologies, which it had used by November 2009.

Although Taylor argues that the "new technology" involved a means through which it could more cost effectively decommission its wells (Pl. Mot. at 18), that fact is not inconsistent with the notion that it did in fact "***invent[] new patented technologies***" and that those technologies are not merely money-saving, but, as Taylor indicated in its FRACE Report, also advanced the state of the art in well decommissioning. Indeed, Taylor's FRACE Report states that its new technologies have been used in a manner that "contributed to the prevention of significant environmental impacts resulting from other events at facilities owned and operated by other companies." Def. Mot. to Dismiss at Ex.

31

G at 43. Taylor did not tout its new technologies as having only saved other companies' money. Further, even were the new technologies designed principally to reduce the costs of the decommissioning efforts, that is by no means irrelevant to the viability of those efforts, as the funds available to Taylor in the Trust could not have sustained completion of its decommissioning obligations at the burn rate suggested by the first two wells. Thus, on or before November 2009, Taylor had recognized that the existing best available technology wasn't adequate for it to accomplish its required decommissioning obligations, and, as a result, it invented new technologies.

Our motion to dismiss based on the statute of limitations with respect to Taylor's decommissioning obligations, which *Taylor* alleges are limited to the use of best available technologies, is based upon Taylor's own allegations in its complaint, its own statements in *its* FRACE Report, and, for the limited purpose of providing a date certain on the employment of these new technologies, the Well Activity Report. Accordingly, there is no reason that Taylor should be provided jurisdictional discovery "to question the Government regarding its inconsistent assertions about the availability of technology to decommission the MC20 wells." Pl. Mot. at 18.

Furthermore, apart from the fact that there are no inconsistent assertions, and thus no needed discovery on that basis alone, Taylor has not expressly stated the type of discovery it envisions here, and it has not identified whom in the Government Taylor proposes that it be permitted "to question." *See* Pl. Mot. at 18 (arguing that it should be "entitled to . . . question the Government regarding its inconsistent assertions."); Pl. Mot. at 21 (arguing that it should be "entitled to question the Government" concerning "the distinction between the scope and remedies associated with Taylor's IBLA appeal and the

instant lawsuit."). Nor has Taylor identified *the non-parties* from whom Taylor claims it "is entitled to discover relevant facts." Pl. Mot. at 11. For these reason, too, Taylor's discovery demands should be rejected by this Court. *Cf., e.g., Grynberg,* 490 Fed. Appx. at 104-05 (denial of jurisdictional discovery upheld when plaintiffs' broad discovery requests were not tailored to address the limited jurisdictional question and did not state what specific documents they would have sought in discovery).

### 3.   Jurisdictional Discovery Concerning The Accrual Of The Claim Concerning The Removal Of The Oil-Contaminated Soil Is Not Warranted

Taylor next argues that it should be permitted jurisdictional discovery with respect to the feasibility, using best available technology, of removing the oil-contaminated soil at the MC20 site, even though it admits that the "Government *relies heavily* on the purported recognition *by Taylor*, in 2009, that removal of the soil would pose greater environmental risk than benefit." Pl. Mot. at 18 (emphasis added). Taylor is correct in this regard:  we relied "heavily," in fact here exclusively, on the allegations in *Taylor's own complaint* and in *Taylor's own documents*, accepting these allegations as true for the purposes of presenting our motion to dismiss.

Thus, in our discussion concerning Taylor's argument that the existing best available technologies were not adequate for Taylor to complete its decommissioning obligations, we rely, in the first instance, on paragraph 45 of Taylor's complaint, which we quoted in its entirety. *See* Def. Mot. to Dismiss at 45. There, Taylor alleges that it commissioned various geotechnical experts "to determine the feasibility of excavation of the contaminated soil at MC 20," and "[t]hese studies ultimately resulted in the conclusion by the experts retained by Taylor that removal of the contaminated soil was

not technically feasible." Compl. ¶ 45. As support *for Taylor's own allegations* we

included an excavation report of two experts *retained by Taylor*, Drs. Roberts and Bea,

dated March 1, 2008. *See* Def. Mot. to Dismiss at Ex. I. In that report, Taylor's experts

divide their analysis into two parts, concluding at the end of the first part that "[t]he

excavation area and volume modeled with a reasonable [Factor of Safety] = 1.5 is not

technically feasible." *Id.* at 4. And at the end of the second part, the report concludes

that results from another study that the authors were reviewing "indicate that the

excavation would not be feasible." *Id.* at 5.

     In our motion to dismiss, we additionally cited to Taylor's complaint at paragraph

46, in which Taylor expressly invokes the 2009 Site Specific Environmental Assessment

as support for *Taylor's argument* that the Government understood in 2009 that leaving

the oil-contaminated soil in place was preferable given potential environmental risks of

transporting oil-contaminated soil through the water column. *See* Compl. at ¶ 46; Def.

Mot. to Dismiss at 46 and at Ex. E (2009 SSEA). Indeed, Taylor alleges that:

> Pursuant to the 2009 SSEA, the MMS therefore concurred
> with the independent experts retained by Taylor that
> removal of the contaminated soil would pose greater
> environmental risk than benefit and that the more
> environmentally beneficial choice was to leave the soil in
> place to allow for natural attenuation.

Compl. at ¶ 46.

     For the limited purposes of our motion to dismiss, we present as true Taylor's

allegations. *See, e.g., Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United

States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012) (in reviewing a motion to dismiss under

Rule 12(b)(1), although the factual allegations in the complaint are not controlling, the

court accepts the uncontroverted factual allegations as true) (citing *Cedars–Sinai Med.*

*Ctr. v. Watkins,* 11 F.3d 1573, 1583 (Fed. Cir. 1993)). Thus, Taylor's *own allegations* support the notion that Taylor knew by 2008, or 2009 at the latest, that removing the oil-contaminated soil was not reasonably feasible. And because Taylor remained obligated to decommission the MC20 site until the decommissioning was completed to the satisfaction of the Government, it is clear that, no later than 2009, Taylor knew or should have known (assuming the truth of its own allegations) that it was impossible and impractical to perform its obligations under Federal law and the Trust Agreement to remove the contaminated soil. *See* Def. Mot. to Dismiss at 46.

Thus, given that our Motion to Dismiss relies upon Taylor's own allegations, this Court should deny Taylor's demand for jurisdictional discovery.

Attempting to sidestep the heart of our reasoning concerning the dismissal of its complaint based on statute of limitations grounds, Taylor jumps to a discussion of the July 2013 CERA Report, suggesting that this report's issuance might provide "the accrual point for Taylor's impossibility of performance and mutual error claims." Pl. Mot. at 18-19. But the CERA Report cannot erase what Taylor knew in 2008 and 2009 relative to its obligations under Federal law and the Trust Agreement. Put another way, a party's "further studying" of an alleged breach does not act to toll the statute of limitations, which runs from the date they knew or should have known of the bases for their claim. In its complaint, Taylor acknowledges that it had notice in 2008 and 2009 that meeting its obligations under the law and Trust Agreement to remove the oil-contaminated soil was not possible. Assuming the truth of Taylor's own allegations, there is nothing to be gained from jurisdictional discovery.

Taylor also argues that it needs jurisdictional discovery in order to determine "when the Government asserts each one of Taylor's four counts allegedly accrued." Pl. Mot. at 15. No such discovery is warranted. As set forth in our motion to dismiss, at the point that Taylor pursued the invention of new technologies because the best available technology was not adequate to perform its well decommissioning obligations – which certainly happened prior to the November 13, 2009 drilling of intervention well A-16 – Taylor knew or should have known the factual bases for its claims under each of its four theories of liability. *See* Def. Mot. at 43-44.

Similarly, with respect to the removal of the contaminated soil, which also forms a component of each of Taylor's four theories of liability, our motion to dismiss relied upon Taylor's own allegations and documents as we demonstrated that Taylor knew or should have known that its claims under each of its four theories of liability had accrued, at the latest, with the publication of the 2009 SSEA, in September 2009. *See* Def. Mot. at 45-46 and Exs. E, I, J; Compl. at ¶¶ 36, 36, 45.

Taylor concludes its discussion of its demand for jurisdictional discovery concerning the statute of limitations by, once again, invoking the notion that the Government inserted some new "indefinite duration" term into the Trust Agreement. Pl. Mot. at 20. And once again, Taylor's argument fails to recognize that Louisiana law does not control the interpretation of the Trust Agreement and that, under Federal law, the Trust Agreement *had always* required Taylor's performance until its decommissioning obligations in the Trust Agreement were met. *See* Def. Mot. to Dismiss at 16-20; Compl. Ex. 1 at §§ 4.5, 4.7, 6.8; 30 C.F.R. §§ 250.1701(a), 250.1703(b), 250.1714-16, 250.300(a)(1). Thus, contrary to Taylor's argument, discovery is not "likely to resolve"

this issue (Pl. Mot. at 20) and accordingly, jurisdictional discovery is not warranted. *See Haber*, 2016 WL 2942370 at *6; *Al Maqaleh*, 738 F.3d at 325-26; *Sioux Honey*, 672 F.3d at 1064; *Nuance Commc'ns*, 626 F.3d at 1235-36; *Cheyenne*, 558 F.3d at 596-97.

Nor is discovery "likely to resolve . . . when the parties had sufficient knowledge to determine that further decommissioning as called for under the Trust Agreement would violate federal law." Pl. Mot. at 20. This argument is merely a subset of the larger argument, already ventilated above, that Taylor knew in 2008 or 2009 that it was "impossible" to safely remove the oil-contaminated soil. And Taylor also certainly knew by November 2009 that the best available technology was not sufficient to permit Taylor to complete its decommissioning duties addressed in the Trust Agreement. Thus, according to Taylor's own allegations and documents, the essential factual circumstances Taylor was faced with, and which form the bases for its claims here, were known to it more than six years ago. Whether or not Taylor understood how this factual situation aligned with Federal law at any given point is irrelevant, because ignorance of the law has no effect in tolling the statute of limitations. *See, e.g., Esso Standard Oil Co. (PR) v. United States*, 559 F.3d 1297, 1305 (Fed. Cir. 2009) (equitable tolling cannot excuse ignorance of governing statute); *accord Anderson v. Sec'y of Health and Human Servs.*, No. 12-16V, 2013 WL 691003 at *4 (Fed. Cl. Jan. 29, 2013) ("[i]t is well-established that a petitioner's lack of knowledge of the law does not constitute an extraordinary circumstance justifying equitable tolling of the statute of limitation.").

### E.   Jurisdictional Discovery Is Not Needed To Resolve The Government's Motion To Dismiss Based Upon The Doctrine Of Primary Jurisdiction

Taylor also argues that it needs jurisdictional discovery so that it can oppose the Government's allegations of primary jurisdiction. Pl. Mot. at 21. Once again, Taylor

rests its discovery argument on its faulty assertion that Louisiana law controls the relevant administration of the Trust: "Taylor should be permitted to question the Government to develop the facts that support its contention that Taylor's *Louisiana law breach of contract claims* asserted in this case fall within the expertise and special competency of the IBLA." *Id.* (emphasis added). Taylor also argues that it should be permitted discovery "from the Government" concerning how the IBLA "will materially aid this Court" in its determination of Taylor's Louisiana-law based breach of contract claims. *Id.* But no jurisdictional discovery is warranted to support a contention that is incorrect as a matter of law; Louisiana law does not control here.[10]

Taylor then asks for jurisdictional discovery "to develop facts related to the distinction between the scope and remedies associated with Taylor's IBLA appeal and the instant lawsuit, as well as the Government's understanding and acknowledgment of those distinctions." *Id.* But Taylor doesn't need to develop facts with respect to the purported remedies it seeks; those are apparent from a review of the IBLA appeal and its complaint in this case. Moreover, Taylor offers no explanation of how that hypothetical discovery will further support its jurisdictional arguments here; on this basis alone its demand for jurisdictional discovery should be denied. *Boschetto*, 539 F.3d at 1020 (jurisdictional

---

[10] Taylor's argument further misrepresents the Government's arguments with respect to primary jurisdiction. As explained further below, the Government does not assert that this lawsuit and the IBLA appeal are identical in terms of claims presented and relief available – *i.e.*, we do not argue that "Taylor's Louisiana law breach of contract claims asserted in this case fall within the expertise and special competency of the IBLA" or that "Taylor's breach of contract claims fall within the IBLA's delegated discretion." Pl. Mot. at 21, 22. Rather, we assert that addressing the underlying predicate decommissioning obligations, and their ongoing viability in the face of Taylor's assertions of impossibility and impracticability, is fundamentally at the core of both matters, and lies primarily within the expertise and special competency of the IBLA. The resolution of those issues by the IBLA would materially aid this court in its adjudication of Taylor's claims in this litigation, that are based on the same theories.

discovery denied when the request for discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts"); *see also Haber*, 2016 WL 2942370 at *6; *Smith*, 495 Fed. Appx. at 49; *Freeman*, 556 F.3d at 341-42 (party seeking jurisdictional discovery "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts"). Moreover, Taylor hasn't disclosed from whom it seeks to obtain discovery to provide guidance with respect to the differences between its IBLA petition and its complaint here, or how discovery into *legal theories* would be appropriate. And despite its demand for IBLA-related discovery, Taylor appears to belie its purported need for jurisdictional discovery with its conclusion that "Taylor's [IBLA] appeal has nothing to do at all with the provisions and requirement of the Trust Agreement or the Government's breach thereof." *Id.* at 22. If that is the case, there can't be any plausible need for discovery. In any event, however, these sorts of conclusory arguments *do not* support a need for jurisdictional discovery.

Taylor further argues that it should be permitted jurisdictional discovery because Taylor "could not and does not seek monetary relief in the administrative proceeding." *Id.* But, for the purpose of assessing the application of the doctrine of primary jurisdiction, it doesn't matter, as a matter of law, that the IBLA case and plaintiffs' action here seek different relief. What matters in the invocation of the primary jurisdiction doctrine is whether the IBLA's decision will materially aid this Court. *See Nat'l Marketing Consultants, Inc. v. Blue Cross and Blue Shield Assoc.*, No. 87 C 7161, 1987 WL 20138 at *2 (N.D. Ill. Nov. 29, 2001) (citing *Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289, 305 (1973)); *see also* Def. Mot. at 47-49. Here, the IBLA is considering whether BSEE properly denied Taylor's request for a departure from its requirement to

fully decommission the MC-20 wells and remove the contaminated soil under the theory that doing so would pose greater ecological risk than benefit. Given that these principles provide the very foundation for Taylor's claims in this litigation, it is very likely the case that the resolution of these questions, particularly within the context of the IBLA's subject matter expertise, should provide material aid to this Court. *See* Def. Mot. to Dismiss at 50-53. Put another way, the facts, conclusions, and holdings by the IBLA will very likely address the core predicate of Taylor's action here: its allegation that the completion of its obligations under the Trust Agreement (which parallel its regulatory obligations at issue before the IBLA) is impossible or the result of a mutual mistake. Therefore, jurisdictional discovery concerning Taylor's IBLA appeal is not warranted.

Moreover, even though Taylor complains that the Government "goes far beyond" the allegations in Taylor's complaint, our discussion of the "factual, scientific, and technical issues that may be considered" by the IBLA in resolving the IBLA appeal is based primarily upon Taylor's own document, the Taylor FRACE Report, which Taylor cited in its complaint. *See* Def. Mot. at 52. Secondarily, we also cite to Taylor's own Notice of Appeal to IBLA and to the CERA Report, a document repeatedly cited by Taylor in its complaint. *See* Def. Mot. at 51, citing Ex. H at 2 and Ex. F.

Thus, again, contrary to Taylor's arguments, our motion to dismiss is based upon Taylor's own allegations and documents. Accordingly, this Court should deny Taylor's request for jurisdictional discovery related to Taylor's IBLA proceeding.

## CONCLUSION

For the reasons set forth above, defendant, the United States, respectfully requests that the Court deny Taylor's motion for jurisdictional discovery.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director


/s/ John H. Roberson
JOHN H. ROBERSON
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 353-7972
Fax: (202) 514-8640
Email:  John.Roberson@usdoj.gov

Dated:  July 28, 2016