# In the United States Court of Federal Claims

Nos. 16-12C
(Filed: April 9, 2019)

| | | |
|---|---|---|
| TAYLOR ENERGY COMPANY LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | Dismissal under Rule 12(b)(6) Failure to State a Claim; Outer Continental Shelf Lands Act; Inapplicability of Louisiana Law |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

*Carl D. Rosenblum*, New Orleans, LA, for plaintiff. *Alida C. Hainkel* and *Lauren C. Mastio*, New Orleans, LA, and *John F. Cooney* and *Paul A. Debolt*, Washington, D.C., of counsel.

*John H. Roberson*, Civil Division, United States Department of Justice, Washington, D.C., with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Steven J. Gillingham*, Assistant Director, for defendant.

## O P I N I O N

**FIRESTONE**, *Senior Judge*

The plaintiff, Taylor Energy Company, LLC ("Taylor" or "Taylor Energy"), filed the pending action on January 4, 2016 claiming a breach of the Trust Agreement ("Trust Agreement" or "Trust") entered on March 19, 2008, between Taylor, as the Settlor, the United States Department of the Interior ("Interior"), as the Beneficiary, and JP Morgan Chase Bank, N.A., as the Trustee. The Trust Agreement was established to secure the funds Taylor needs to perform federally mandated decommissioning and related work on oil and gas wells leased by Taylor under the Outer Continental Shelf Lands Act

("OCSLA").  43 U.S.C. § 1331-56b.[1]  During the lifetime of the subject leases either Taylor or its predecessor drilled twenty-eight oil wells, each of which was connected to a single platform that stood on a portion of seafloor in the Gulf of Mexico called the Mississippi Canyon Block 20 ("MC-20").

Under the terms of the Trust Agreement, Taylor is to be reimbursed a defined amount for the costs it incurs in meeting specified regulatory obligations under the OCSLA to "plug and abandon wells, remove a portion of the platform and facilities and, clear the seafloor of obstructions, and take corrective action associated with wells and facilities."  Trust, at 1, 20-22; *see also* 30 C.F.R. §§ 250.1710-17 (permanently plugging wells), 1725-30 (removing platforms and other facilities), 1740-43 (site clearance for wells), 1750-54 (pipeline decommissioning); 30 C.F.R. § 250.300 (pollution prevention). The Trust Agreement provides a mechanism for making disbursements from the Trust Account "for the actual costs of the work performed and costs incurred to satisfy [Taylor's federal regulatory] obligations." Trust, Section 4.1.  Taylor has deposited a total of $666,280,000 into the Trust.

Taylor has already undertaken or completed certain decommissioning and related work and received disbursements from the Trust Account for that work. There is approximately $432,000,000 remaining in the Trust Account, of which $408,000,000 is designated for Taylor's continued federal regulatory obligations to plug wells and other

---

[1] Interior issued "Bonding Orders" requiring Taylor to post security in the amount of $666,280,000 in accordance with 30 C.F.R. § 556.56 (2015). Interior and Taylor entered into this Trust Agreement as the mechanism by which Taylor has complied with its regulatory bonding requirements. 30 C.F.R. § 556.901(d); *See Taylor Energy Co. LLC*, 193 Interior Dec. 283, 2018 WL 6620460 (IBLA 2018).

work. Under the Trust Agreement, if Taylor fails to comply with these regulatory obligations, Interior, as Beneficiary, "may perform any uncompleted Work, at risk and liability of [Taylor], and direct the Trustee to distribute to the [government] the Trust Funds to pay or reimburse the [government] for any expenses incurred or to be incurred in performing the Work." Trust, Section 4.8.

Taylor claims based on a May 14, 2015 document entitled "The United States' Views on the Status of Taylor Energy Company's Obligations at Well Site MC 20 and Taylor Energy's Ongoing Oil Spill," ("US Views"), and the studies cited therein that the government should be required to return the funds remaining in the Trust Account and pay damages under Louisiana state law because it is not disputed that decommissioning the remaining wells is not "currently technologically feasible," but "no reversion or partial reversion of Trust funds is warranted until the oil spill is permanently stopped and decommissioning work and related oil containment/removal work is completed." *See* Def.'s Mot. to Dismiss, Ex. M (US Views document).

In Count I of its complaint, Taylor alleges that under the La. Civ. Code art. 1778, "every contract must be complete within some ascertainable term," and that the government cannot lawfully "suspend Taylor's performance . . . indefinitely and potentially in perpetuity." Compl. at ¶ 31. In Count II, Taylor alleges, citing La. Civ. Code art. 1873, that the Trust Agreement must be dissolved because, according to Taylor, a contracting party cannot be liable for failure to perform when "a fortuitous event"

makes it "impossible" to perform.[2]  Compl. at ¶ 33. In Count III, Taylor requests reformation or partial rescission based on mutual error. Relying again on Louisiana law, La. Civ. Code art. 1948-50, Taylor alleges that the Interior and Taylor "mutually erred as to their contractual cause when they agreed that it was technically possible . . . to perform." Compl. at ¶ 35.  In Count IV, Taylor alleges a breach of the Trust Agreement based on the obligation under La. Civ. Code art. 1759 to perform contracts in good faith. Taylor alleges that the Interior has breached its duty of good faith and fair dealing by refusing to "direct the release to Taylor of funds remaining in the Trust Account," even though Taylor cannot undertake any decommissioning work using existing technologies. Compl. at ¶¶ 36-7.

Pending before the court is the United States' (the "government's") motion to dismiss Taylor's complaint under Rules 12(b)(1) for lack of jurisdiction and 12(b)(6) for failure to state a claim under the Rules of the Court of Federal Claims ("RCFC") (ECF 11). In addition to the government's motion, Taylor has moved for summary judgment on Count I of its complaint arguing that the Interior has violated Louisiana law by imposing an indefinite term. (ECF 65).

For the reasons discussed below, the court finds that Taylor's case must be dismissed for failure to state a claim.

## I.   FACTUAL BACKGROUND

---

[2] Under Louisiana law a "fortuitous event" is one that could not have been foreseen at the time of contract. La. Civ. Code art. 1875.

Taylor Energy was the lessee and operator of three separate leases issued by the Federal Government, which Taylor obtained through assignment by third parties.  As noted above, during the lifetime of those leases either Taylor or a predecessor drilled twenty-eight oil wells, each of which were connected to a single platform that stood on a portion of the seafloor in the Gulf of Mexico called the MC-20.  In 2004, prior to the lease's expiration on June 28, 2007, Hurricane Ivan toppled Taylor's platform onto the ocean floor resulting in significant damage to the oil wells and making them inoperable.

After the expiration of the leases, Taylor and the Federal Government entered into a Trust Agreement to ensure that Taylor had sufficient funds to meet its regulatory obligations to decommission the remaining wells and to perform the appropriate clean up as required by the Interior's regulations implementing the OCSLA. In April 2008, the Interior approved a departure from standard decommissioning procedures and authorized Taylor to plug and abandon wells by drilling intervention wells rather than by the conventional plug and abandonment methods.  From April 2008 until March 2011, Taylor was able to decommission nine of the twenty-five wells.[3]  During this period Taylor was also able to remove the platform decking, clear seafloor obstructions, and remove the pipelines.

In 2012, the Unified Command ("UC"), which is composed of Taylor, Interior, and the Coast Guard, commissioned two working groups to evaluate the remaining

---

[3] Although the MC-20 site had 28 wells, Taylor was only required to decommission twenty-five wells because three wells had been temporarily abandoned before Hurricane Ivan hit the platform in 2004.

Taylor wells.[4]  The UC created a well review work group and a sheen source work group. The well review work group was composed of experts from the Bureau of Safety and Environmental Enforcement ("BSEE") within Interior, and of experts from the Coast Guard.[5] The well review work group was tasked with analyzing the technical risks of drilling further intervention wells for the remaining sixteen wells.  The sheen source work group was tasked with identifying the source of the oil sheen at the site of Taylor's oil wells.  In May and June 2013, the UC convened a group of officials and experts from various federal and state agencies and Taylor to conduct a Consensus Ecological Risk Assessment ("CERA") on the environmental and ecological consequences and risks of removing soil and drilling additional intervention wells.  The CERA report concluded that the ecological risks associated with drilling more intervention wells and disturbing the soil outweighed the ecological benefits.  Since the CERA report was issued, Taylor has not undertaken any additional work to cap the wells or remove the contaminated soil. Compl. at ¶ 19-23.

Based largely on the results of the CERA report, Taylor, on March 21, 2014, made a formal request to BSEE for a "departure" from any further well decommissioning for the sixteen remaining wells. Taylor argued that the extraordinary operational costs and associated environmental risks outweigh any potential benefits of further attempting to decommission the remaining wells with the current best available technology. Taylor also

---

[4] The Unified Command was created pursuant to 40 C.F.R. Part 300 in the Fall of 2007 to address the MC-20 site and the various environmental and logistical concerns with regard to oil leaks from the site and the decommission of the twenty-five wells.
[5] The Coast Guard is the organization responsible for overseeing the OCSLA and has responsibility over oil spills and Taylor.

requested a departure from its obligation to cleanup contaminated sediment and to instead keep the sediment in place so that natural sedimentation could form a cap over the contaminated sediments. Compl. at ¶ 60.

On May 11, 2015, BSEE denied Taylor's departure requests. *Id.* at ¶ 61. Although BSEE did not require Taylor to begin drilling any more intervention wells or removing any contaminated sediments, BSEE stated that it was denying Taylor's request because "of the continuing discharge of oil from the MC-20 site, Taylor's inability to contain the discharge, and the possibility that future plugging and abandonment work and/or the removal of contaminated sediments may be required." *See Taylor Energy Co. LLC*, 193 Interior Dec. 283, 290-91 (IBLA 2018).

After BSEE's decision but before Taylor filed an appeal of BSEE's decision, the United States issued the "US Views" document referenced above. As stated, the US Views document stated that further decommissioning work by Taylor would be on hold while the continuing discharge of oil from Taylor's wells is studied but that it would be premature to return the funds held under the Trust Agreement. Specifically the US Views document stated that "[s]ignificant uncertainty exists related to the opinions about future events, including worse case discharges, sources" and that "[a]ny assertions regarding the availability or unavailability of 'existing' technology to completely stop  and contain ongoing discharges does not resolve the issues as to whether this discharge can be stopped or contained in the near or more distant future based on improved technology." US Views at ¶¶ 14 and 15. The US Views document went further on to provide that no reduction in funding for the Trust Agreement is warranted and no reversion or partial reversion of the Trust funds are warranted until "the oil spill is permanently stopped and

decommissioning work and related oil containment/removal work is completed." *Id.* at ¶¶
9 and 10.

On July 9, 2015 Taylor filed a notice of appeal with the Interior Board of Land Appeals
("IBLA").  On October 30, 2018 IBLA issued a decision affirming the BSEE's denial of
Taylor's departure request. *Taylor Energy Co. LLC*, 193 Interior Dec. at 283. The IBLA
determined that Taylor failed to demonstrate that BSEE had made an error of law, fact or
irrational decision in denying Taylor's "departure" request and thereby refusing Taylor's
request to be released from any further obligations to clean-up the contaminated soil and
decommission the remaining sixteen wells associated with the MC-20 site. *Id.* The IBLA
reasoned that granting Taylor a departure from all of its decommissioning obligations
because of environmental impacts and the limitations of current technology was not
justified and would "preclude BSEE from awaiting changes in technology and a better
understanding of the undersea environment improperly constrains its statutory and
regulatory authority over offshore well decommissioning and unnecessarily limits its
overriding responsibility to protect the environment from the adverse consequences of
offshore drilling and production." *Id.* 297-98.  Taylor has informed the court that it will
not challenge the IBLA's decision affirming the BSEE's denial of Taylor's departure
request. (ECF 103).

As noted, Taylor filed the pending action on January 4, 2016. Taylor based its
claims on Louisiana law arguing that under the Trust Agreement, Section 6.9, the parties
agreed to apply Louisiana law. Trust, Sect. 6.9 ("This Trust Agreement shall be governed
by and construed in accordance with the laws of the State of Louisiana without giving
effect to the state's conflict of laws rules, but the parties consent to the jurisdiction of the

federal courts to resolve any dispute arising under the Trust Agreement."). Each of the counts in Taylor's complaint are based on alleged violations of Louisiana law.

The United States, in its motion to dismiss, argues that Section 6.9 of the Trust Agreement does not govern Taylor's federal regulatory obligations under the OCSLA which cannot be altered by state laws. The government relies on the numerous provisions of the Trust Agreement which incorporate Taylor's regulatory obligations under the OCSLA and established Supreme Court precedent that makes clear that regulation of the OCSLA is governed by federal law. *See* 30 C.F.R. §§ 250.1710-17, 1725-30, 1750-54; 30 C.F.R. § 250.300. *Rodrigue v. Atena Cas. & Sur., Co.*, 395 U.S. 352, 357-8 (1969); *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 217 (1986).

While Taylor's departure request was on appeal before the IBLA, the court did not act on the government's motion to dismiss or Taylor's motion for summary judgment. The court reasoned that if the IBLA reversed BSEE and granted Taylor a departure, it would have had a significant impact on the case. Following the IBLA decision, upholding BSEE's denial of Taylor's departure request, the court asked the parties to file status reports addressing whether the IBLA's decision upholding BSEE's decision not to grant a departure had altered the parties' positions in some way.

In its response, Taylor explained that because it still cannot proceed with decommissioning the remaining wells at this time using existing technologies that it is entitled to the relief it seeks under its four Count complaint. Taylor claimed that the government remains in violation of Louisiana law by unilaterally inserting an indefinite term for Taylor's performance, as alleged in Counts I and IV. Taylor further explained that, regardless of the IBLA decision, the Trust Agreement must be dissolved under

Louisiana law because it remains presently "impossible" to perform (Count II), or that the

Trust Agreement must be reformed or partially rescinded based on the parties' mutual

mistake (Count III).

The government in its post-IBLA response stated that all of Taylor's claims based

on Louisiana law still must be dismissed. The government explained that Taylor is bound

by federal law regarding its regulatory obligations under the Trust Agreement and that

without a departure from those regulatory obligations from Interior, Taylor's regulatory

obligations, including the obligation to maintain the necessary funds in the Trust

Account, remain unchanged. (ECF 104).

Taylor argued in response to the government's contentions that while Taylor

agrees that it must meet its federal regulatory obligations, the government has separately

violated the Trust Agreement and thus Taylor is entitled to the relief it seeks. According

to Taylor, regardless of the IBLA decision, this court must apply Louisiana contract law

in construing the Trust Agreement, and under the terms of the Trust Agreement the

government cannot continue to hold Taylor's funds and owes Taylor damages.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss Standards of Review

#### 1.   RCFC 12(b)(1) – Subject Matter Jurisdiction

"Whether this court has subject matter jurisdiction is a threshold matter, and if no

jurisdiction exists, the court must order dismissal without proceeding further." *Vanquish

Worldwide, LLC v. United States*, 134 Fed. Cl. 72, 76 (2017) (citing *PODS, Inc. v. Porta

Stor, Inc.*, 484 F.3d 1359, 1365 (Fed. Cir. 2007)).  Under the Tucker Act, an action may

be maintained in this court only if it is "founded either upon the Constitution, or any Act

of Congress or any regulation of an executive department, or upon any express or implied

contract with the United States, or for liquidated or unliquidated damages in cases not

sounding in tort." 28 U.S.C. § 1491(a)(1).  A plaintiff seeking to litigate in the Court of

Federal Claims "bears the burden of establishing subject-matter jurisdiction by a

preponderance of the evidence."  *Hopi Tribe v. United States*, 782 F.3d 662, 666 (Fed.

Cir. 2015) (quoting *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327

(Fed. Cir. 2010)).  Where, as here, the government has moved to dismiss the claims on

jurisdictional grounds, including that the case is barred by the statute of limitations, "the

factual allegations in the complaint are not controlling and only uncontroverted factual

allegations are accepted as true."  *Shoshone Indian Tribe of Wind River Reservation,

Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012) (citations omitted).  "If a

motion to dismiss for lack of subject matter jurisdiction . . . challenges the truth of the

jurisdictional facts alleged in the complaint, the . . . court may consider relevant evidence

in order to resolve the factual dispute."  *Reynolds v. Army & Air Force Exch. Serv.*, 846

F.2d 746, 747 (Fed. Cir. 1988) (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947)). In

addition, the court has an independent obligation to determine its jurisdiction. *Arbaugh v.

Y&H Corp.*, 546 U.S. 500, 506 (2006). Thus, if the court finds that a party lacks

jurisdiction the court on its own must dismiss the case under RCFC 12(h)(3).

### 2.  RCFC 12(b)(6) – Failure to State a Claim

In ruling on motions to dismiss for failure to state a claim under RCFC 12(b)(6)

the court applies the following well-settled standards.  To avoid dismissal under RCFC

12(b)(6), "a complaint must allege facts 'plausibly suggesting (not merely consistent

with)' a showing of entitlement to relief." *Mathews v. United States*, 750 F.3d 1320, 1322

(Fed. Cir. 2014) (quoting *Kam-Almaz v. United States*, 682 F.3d 1364, 1367 (Fed. Cir. 2012)).  When deciding a motion to dismiss for failure to state a claim upon which relief may be granted, the court "must accept as true all factual allegations in the complaint." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001).

### B.      Motion for Summary Judgment Standards

Summary judgment must be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Mann v. United States*, 334 F.3d 1048, 1050 (Fed. Cir. 2003).  A material fact is one "that might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.  The burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Coletex, Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On a motion for summary judgment, the court views the evidence "in the light most favorable to the party opposing the motion," and resolves all doubts in favor of the nonmovant.  *Crown Operations Int'l v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002); *see also Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 991 (Fed. Cir. 2009).  In its analysis the court may neither make credibility determinations nor weigh evidence and seek to determine the truth of the matter.  *See Anderson*, 477 U.S. at 255.

### III.   DISCUSSION

### A.      Taylor's Claims Based on Violations of Louisiana State Law Are Not Barred by the Statute of Limitations

The government argues that Taylor's claims based on the inclusion of an indefinite term are barred by the six year statute of limitations for claims brought under the Tucker Act, 28 U.S.C. § 2501,[6] on the grounds that Taylor knew or should have known prior to January 2010 that the best available technologies were not sufficient to decommission the MC-20 site in a cost effective manner and that delays would be inevitable. Stripped to its essence, the government argues that there was no clear time-table for decommissioning Taylor's wells at the time it entered into the Trust Agreement in 2008 and thus it cannot now claim delays in decommissioning give rise to a breach of the Trust Agreement.

Taylor argues in response that the dispute in this case arises from the government's decision on May 11, 2015, as set forth in the US Views document, as discussed above, when the document stated that Taylor must maintain the funds in the Trust Account after the government determined that decommissioning could not continue using present technology. US Views at ¶¶ 9 and 10. Taylor maintains that it is the government's refusal to return the monies held in trust after it determined in May 2015 that decommissioning work is not now possible that gives rise to the government's violations of Louisiana state law and Taylor's claims.

The court agrees with Taylor that its claims are not barred by the six year statute of limitations. Regardless of whether Taylor understood that there would be delays in decommissioning as early as 2010, it was not until 2015 that Taylor learned that the government would not consider releasing the funds in the Trust Account even though the

---

[6] 28 U.S.C. § 2501 provides "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."

government had determined that Taylor would not be able to continue any decommissioning work using present technologies.

Breach of contract claims accrue when "'all events have occurred to fix the government's liability, entitle the claimant to demand payment and sue [to recover] his money.'" *Martinez v. United States,* 333 F.3d 1295, 1303 (Fed. Cir. 2003) (quoting *Nager Elec. Co. v. United States,* 368 F.2d 847, 851 (Ct. Cl. 1966)).  Here, Taylor's claims accrued only when as it alleges it was notified that the government would not return any Trust Agreement funds in May 2015. As such, because the claims did not accrue until 2015, the government's motion to dismiss based on the statute of limitations is **DENIED**.

### B.    Taylor's Indefinite Period Claims Identified in Counts I and IV Based on State Law Must be Dismissed For Failure to State A Claim

Taylor seeks summary judgment on its claim that the government has breached the "Trust Agreement" by allegedly inserting an indefinite term into the Agreement, contrary to Louisiana law. Under La. Civ. Code art. 1778, every contract must be complete within "a reasonable time" when the term for performance of the contract is not fixed and determinable.  Relying on the Louisiana Civil Code for contracts, La. Civ. Code art. 1778, Taylor argues that because it has now been determined by BSEE and confirmed by the IBLA, that it is uncertain when Taylor will be able to complete the decommissioning of its wells, the obligations under the Trust Agreement cannot be completed within a "reasonable time," and thus the government must relinquish the monies held in Trust for decommissioning.  Based on this same reasoning, Taylor also alleges that the government has also breached its duty of good faith and fair dealing under La. Civ. Code art. 1759, by

unilaterally imposing an indefinite term for Taylor's performance. La. Civ. Code art. 1759 provides that "[g]ood faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligations[,]" and La. Civ. Code Ann. art. 1983, which states that "[c]ontracts must be performed in good faith."

At the court's request, the parties were asked if Taylor is correct in asserting that Louisiana contract law applies in construing the Trust Agreement, or whether because by its terms the "Trust Agreement" is identified as a "trust" and Louisiana trust law applies. In its briefing, the government states that the Trust at issue in this case is similar to a spendthrift trust meant to preserve Taylor's funds for Taylor to use to meet its federal regulatory obligations. ECF 60 at 27 n.8.  Regarding the length of performance or "term" of the trust, the government notes that the Trust Agreement terminates when the government concludes Taylor has completed its federal regulatory obligations as provided for in Section 6.8 of the Trust. In the alternative, the government argues that should the court find that Louisiana law applies then Louisiana law provides that the Trust expires 50 years from its creation in this case in 2058. ECF 60 at 44 n.13. *See* La. Stat. Ann. §§ 9:1833(2) and 9:1831(4) ("[A] trust shall terminate at: (4) the expiration of fifty years from the creation of the trust, if none of the settlors and none of the income beneficiaries are a natural person.")  The government concludes to the extent Louisiana law applies, Taylor has failed to state a claim because 50 years have not expired. *Id.*

Taylor argues that the court should not apply Louisiana "trust" law because the subject Trust Agreement does not comport with the proper form of a trust as described by

La. Stat. Ann. § 9.1752[7] and therefore the Trust Agreement should be construed as a contract.  Specifically, Taylor argues that the Trust Agreement cannot be a trust because there were no witnesses to the signing of the Trust Agreement.  The documents on their face, state however, "in witness whereof" before each of the signatures. Trust at p.19. Additionally, Taylor argues that the "Trust Agreement" looks more like a contract than a trust because the property does not belong to and is not distributed by the beneficiary, here the Interior, but rather by a third party, the trustee, J.P. Morgan.  Taylor does not directly respond to the government's contention that the Trust Agreement is similar to a spendthrift trust and thus should not be seen as a contract simply because the Interior, the beneficiary, does not hold the funds.

The court agrees with the government and finds that to the extent the Trust Agreement regarding the length of performance or term must be construed using Louisiana law, a matter that does not have to be presently resolved, the Trust Agreement must be construed as a "trust" under Louisiana law.  Taylor's claim that the Trust Agreement is a contract under Louisiana law is not supported. Under La. Stat. Ann. § 9:1753, "no particular language is required to create a trust, but it must clearly appear that the creation of a trust is intended." Here, the court finds that a document entitled "Trust Agreement" and establishes the rights and obligations of the Settlor (Taylor), the Beneficiary (the Interior), and a Trustee (J.P. Morgan), without question established a trust. Further, under Louisiana law, there is no violation of the Trust Agreement on the

---

[7] La. Stat. Ann. § 9.1752 provides that "[a]n inter vivos trust may be created only by authentic act or by act under private signature executed in the presence of two witnesses and duly acknowledged by the settlor or by the affidavit of one of the attesting witnesses."

grounds that the government inserted an indefinite term because under Louisiana law the Trust, if not modified, will expire 50 years from its creation.

By its terms this Trust will terminate when Taylor, as Settlor, and the Interior, as Beneficiary, agree to terminate the trust or when the Beneficiary, in writing, concurs that the Settlor has complied with all of its obligations under the Trust Agreement. *See* Trust Agreement, Section 6.8 (titled "Termination"). Under Louisiana law, "[i]f the trust instrument stipulates a term and unless an earlier termination is required by the trust instrument," a trust shall terminate at: "The expiration of fifty years from the creation of the trust, if none of the settlors and none of the income beneficiaries is a natural person." La. Stat. Ann. § 9:1831(4). Therefore, even if Louisiana law applies, the government cannot be held liable for inserting an indefinite term until 50 years has passed from the creation of the Trust. For this same reason, the government cannot be held liable for breaching its duty of good faith and fair dealing under Louisiana law until 50 years expire. In this connection, Taylor has failed to state a claim under Louisiana law for Counts I and IV and the government's motion to dismiss these counts is **GRANTED**. In view of the foregoing, Counts I and IV are **DISMISSED** and Taylor's motion for summary judgment on Count I is **DENIED AS MOOT.**

### C. Taylor's Remaining Claims Also Must Be Dismissed For Failure To State A Claim

The court finds that Taylor cannot state a claim under Counts II and III of its complaint based on the Louisiana laws regarding impossibility and mutual mistake because Taylor's federal regulatory obligations under the Trust Agreement are not governed by state law. Taylor's obligations to comply with OCSLA regulations for

decommissioning its wells, including the obligation to maintain funding to perform those obligations, as expressly provided for in the Trust Agreement, are governed by federal law. 43 U.S.C. § 1333(a)(2)(A); *Rodrigue,* 395 U.S. at 357-8 ("[i]t is evident . . . federal law is 'exclusive' in its regulation of [the Outer Continental Shelf], and that state law is adopted only as surrogate federal law"); *Offshore Logistics, Inc*, 477 U.S. at 217 ("[w]ithin the area covered by OCSLA, federal law controls but the law of the adjacent State is adopted as surrogate federal law to the extent that it is not inconsistent with applicable federal laws or regulations").

The Trust Agreement by its terms was established to fulfill Taylor's federal regulatory obligations. It is the Interior, the Beneficiary, that set those obligations under the Trust Agreement. Indeed, as discussed above, Taylor's federal regulatory obligations do not terminate until approved or agreed to by the Beneficiary. The IBLA, after considering many of the same arguments Taylor makes in its complaint and briefs before this court, refused to overturn BSEE's decision not to grant Taylor a "departure" from the regulatory obligations Taylor agreed to perform in the Trust Agreement. Taylor has decided not to challenge the IBLA's decision and in fact agrees it remains bound by these federal regulatory obligations. Taylor argues, however, that regardless of the IBLA decision, state law controls the Trust Agreement based on Section 6.9.  Therefore, Taylor alleges, if the court finds under state law that it is now impossible for Taylor to decommission its remaining wells, the court must order the government to return the monies held in the Trust because of impossibility or mutual mistake.

The government argues that because Interior alone has the authority to determine whether it is impossible for Taylor to meet its federal regulatory obligations regarding

decommissioning this court cannot apply state law to find otherwise. The government contends that under the Trust Agreement Taylor agreed to comply with the federal regulatory obligations incorporated into the Trust Agreement. So long as Taylor is required to meet its federal decommissioning obligations as set in the Trust Agreement, the government argues, this court cannot find the government in violation of state law with regard to those federal regulatory obligations and release Taylor's funds from the account set in the Trust Agreement.

The court agrees with the government. The Trust Agreement, by its terms and as quoted at the outset of this opinion, was created to ensure that Taylor would have the funding needed to meet its federal decommissioning regulatory obligations.[8] The court also agrees that under the Trust Agreement Interior, as the Beneficiary, alone has the legal authority to determine when decommissioning will begin and when it is completed. Trust, Section 6.8. The IBLA, on behalf of Interior, has determined that Taylor remains obligated to decommission its wells under federal law. Taylor has decided not to challenge the IBLA's decision. This court cannot second guess the IBLA and determine that Taylor's federal regulatory decommissioning obligations are impossible and thus Taylor should be relieved of those obligations including the obligation to keep its funds available under the Trust Agreement.

---

[8] Additionally, as referenced above, the Trust Funds are also to ensure that in the event that Taylor defaults on its regulatory decommissioning obligations the government has the ability to have the Trustee disburse funds to the government to reimburse the government for any costs it incurred performing the work that should have been performed by Taylor. Trust, Section 4.8.

The court recognizes that Taylor is free to seek another "departure" from Interior at some later date.  If in the future Interior refuses to grant Taylor departure relief after more studies are completed, Taylor will have the option of seeking review of that decision in the appropriate federal court.  However, until Taylor is relieved of its federal decommissioning obligations by Interior, this court cannot find on its own that it is "impossible" for Taylor to comply with its Trust Agreement obligations or that the Trust Agreement was entered based on a mutual mistake. Taylor is asking this court to find that its performance under the Trust Agreement is impossible and that the government and Taylor mutually erred when they agreed that it was technically possible to perform because Interior later determined that decommissioning is not currently feasible with existing technology but the obligations to decommission are still ongoing. Contrary to Taylor's contentions, however, Interior's decision, as set forth in the US Views document, and confirmed by the IBLA decision, to have Taylor stop decommissioning work until further studies are performed and the oil leaking from Taylor's wells is contained is not a decision by the federal regulatory authorities that decommissioning is impossible and should be abandoned. Instead, the US Views document and the IBLA stated that more work and studies are needed before that decision can be made by Interior. US Views ¶¶ 15 and 16; *Taylor Energy Co. LLC*, 193 Interior Dec. at 297-98.

Taylor's argument that the court must separate Taylor's regulatory obligations under the Trust Agreement from its regulatory obligations under the OCSLA is not supported. As noted at the outset, the Trust Agreement implements Taylor's federal regulatory obligations under the OCSLA. Taylor's statements in court to the effect that Taylor remains committed to meeting its federal regulatory obligations under the OCSLA

even if the Trust monies are returned to it based on the application of state law, ignores the fact that the Trust Agreement was entered into to ensure compliance with Taylor's federal regulatory obligations, including Taylor's obligation to retain adequate funding. Until those federal regulatory obligations are changed by Interior, Taylor must abide by those federal obligations under the Trust Agreement. The Louisiana laws on impossibility and mutual mistake do not apply to issues regarding Taylor's federal regulatory obligations under the Trust Agreement.[9]  Therefore, Taylor cannot state a claim that under state law that the Trust Agreement must be dissolved because of "impossibility of performance," under La. Civ. Code art. 1873; or "reformed" or "rescinded" based on mutual mistake under La. Civ. Code arts. 1948-1950. Accordingly, the government's motion to dismiss Counts II and III for failure to state a claim is **GRANTED** and these Counts are **DISMISSED.**

## CONCLUSION

For the reasons discussed above, the government's motion to dismiss all Counts in plaintiff's complaint for failure to state a claim is **GRANTED** and plaintiff's complaint is **DISMISSED** in its entirety under RCFC 12(b)(6) for failure to state a claim. Plaintiff's motion for summary judgment is **DENIED AS MOOT.** Additionally, Taylor's motion for jurisdictional discovery (ECF 53) and motion to strike statements made by the

---

[9] The court recognizes that Section 6.9 states that state law will govern this agreement. That provision does not mean, however, that Taylor's federal regulatory obligations under the Trust Agreement are governed by state law. The Trust Agreement plainly provides that Taylor's regulatory obligations have been set by federal law. This does not render the state law provision superfluous. That provision may come into play if there are disputes involving the actions of the Trustee or potential disputes between the Settlor and Trustee.

government in its motion to dismiss and reply brief (ECF 62) are **DENIED AS MOOT**.

The clerk shall enter a judgment consistent with this decision. No costs.

     **IT IS SO ORDERED.**

s/Nancy B. Firestone

NANCY B. FIRESTONE

Senior Judge
